## WALLACE PORTER v. STATE.

No. A-1365.    Opinion Filed September 14, 1912.

(126 Pac. 699.)

1.    **EVIDENCE—Character of Accused.** Where the character or reputation of the accused is not an element of the crime charged, the prosecution cannot put it in issue by offering evidence of his bad character, unless the defendant first offers evidence of his good character. The prosecution may then rebut it by evidence of bad character.

2.    **APPEAL—Prejudice from Error.** Unfairness in the prosecution of a criminal case will vitiate a verdict of guilty, unless it clearly appears from the record that the defendant could not have suffered injury thereby.

3.    **WITNESSES—Impeachment—Charge of Criminal Offense.** It is improper to ask a witness if he has ever been indicted, arrested, or imprisoned, before conviction, for any offense whatever. Where such question is asked, it should be promptly excluded, with a rebuke to the lawyer asking the same; and if the question is repeated it should be treated as a contempt of court and punished as such.

(Syllabus by the Court.)

*Appeal from District Court, Jefferson County;*
*Frank M. Bailey, Judge.*

Wallace Porter was convicted of manslaughter in the first degree, and sentenced to seven years' imprisonment in the state penitentiary, and appeals. Reversed and remanded.

*John H. Harper* and *Stuart, Cruce & Gilbert,* for appellant.

*Chas. West,* Atty. Gen., for the State.

FURMAN, P. J.    Three questions are presented in the brief of counsel for appellant:

First.    Counsel, in their brief, say:

"The record does not show testimony sufficient to establish the venue of the offense. The only testimony in the record is that the body of the deceased was found near the old Clay house; some witnesses say about 2 miles, and some about 2½ miles, from Grady."

Counsel certainly did not carefully read the record in this case. It is true that Dr. Davis did testify for the state that the body of the deceased was found about two and one-half miles southwest of the town of Grady; but the last question asked him on direct examination was, "Where was this?" He answered: "In Jefferson county, State of Oklahoma." Mr. W. J. Stowe, a witness for the state, testified that the fatal shooting took place at the old Clay house in Jefferson county, Okla. So the first contention of appellant is not supported by the record.

Second. Counsel for appellant, in their brief, say:

"The defendant did not put his reputation in issue. The witness Steadham, over the defendant's objection, was permitted to testify as to the defendant's reputation. It is true he first testified that such reputation was good; but, after constant questioning at the hands of the prosecutor, he finally stated that what he meant by stating that the defendant's reputation was good was that it was sometimes good and sometimes bad."

When Zack Steadham was on the stand as a witness, he testified as follows:

"Q. How long have you known Wallace Porter? A. Two or three years. Q. What is his general reputation down there as being a dangerous and disorderly citizen? Mr. Harper: Objected to as incompetent, irrelevant, and immaterial. (Overruled. Defendant excepts.) A. I think he is considered all right. Q. Absolutely all right? A. Yes, sir. Q. Much better than Miller's? A. Yes, sir. Q. Did you ever hear of Wallace Porter getting into any trouble? A. No, sir. Q. You don't know of him being under bond at this time for shooting old man Stowe? A. No, sir. Q. You don't know anything about him being arrested by John Wright for stealing a horse? (Objected to. Sustained.) Q. You say Wallace Porter's general reputation in the neighborhood where he lives as being a peaceable, law-abiding citizen is good? Mr. Harper: Objected to. (Overruled. Defendant excepts.) A. It is fairly good. Q. What do you mean by fairly good? Does it mean that it is an average; or does he sometimes do something that is wrong, and sometimes do something that is right? A. Yes, sir; that's what I mean." "That's all. Witness is excused."

In the case of *People v. Shea*, 147 N. Y. 78, 41 N. E. 505, Mr. Justice Peckham said:

"In order to prove a man's guilt, it is not permitted to show his former character, or to prove his guilt of other crimes, merely for the purpose of raising a presumption that he who would commit them would be more apt to commit the crime in question. Where the character or reputation of the accused is not an element of the crime charged, the prosecution cannot put it in issue by offering evidence thereof. Nor can it do so in the first instance by cross-examining the defendant's witnesses as to his character or reputation. But where the defendant offers any such evidence the prosecution may rebut it by like evidence."—Volume 3, Encyclopædia of Evidence, p. 12.

If the law were to permit the introduction of evidence as to the commission of crimes by a defendant other than the one for which he is upon trial, or were to permit the state to offer testimony of his general bad character as original evidence against him, it would result in a confusion of issues before the jury; and if the principle involved were recognized it would be hard to set a limit to the extent to which the issues in a case might be multiplied. As we understand the law, there is but one rightful issue in the trial of a criminal case, and that is, Did the defendant commit the specific crime with which he is charged? The state is limited in its evidence in chief to this issue. No testimony is admissible against the accused, unless it is connected with or throws some light upon this specific issue. No one will contend that the bad character of a defendant is original evidence against him when he is upon trial for any violation of the penal laws. We think that the rule is universal that the state cannot prove the bad character of the accused until he has put his good character in issue. The case of *State v. Hull,* 18 R. I. 207, 26 Atl. 191, 20 L. R. A. 609, presents an able discussion of this question, and the notes to this case contain an unanswerable array of authorities in support of the proposition stated. This question is so well founded in reason and supported by authorities that further discussion is unnecessary. If the appellant had put his character for peace in issue, a different question would be presented, because the state would have had the right to rebut any testimony offered by appellant. The appellant offered no evidence as to his general reputation for peace. It is true that on cross-examination appellant did admit that he was then under

bond on account of some trouble with the Stowes. This evidence itself was incompetent and highly prejudicial.

It is improper to ask a witness if he has ever been indicted, arrested, or imprisoned, before conviction, for any offense whatever. See *Slater v. U. S.*, 1 Okla. Cr. 275, 98 Pac. 110. The fact that incompetent evidence had been admitted, although without objection, cannot justify the admission of other incompetent evidence. By taking the witness stand in this case, the credibility of appellant and his reputation for truth and veracity as a witness were in issue; but to this extent only could his character be attacked. The fact that appellant placed in issue the general reputation of the dececased as to his being a dangerous man did not place the character of appellant for peace in issue. The questions asked the witness Steadham, with reference to the character of appellant, were all highly improper. The insinuation which they conveyed was that appellant was an all-around bad man and a horse thief. It presented a style of prosecution of which this court does not approve. No man should be clothed with sanctity or visited with condemnation simply because he is accused of crime. He is entitled to fair treatment on his trial, and the presumption of innocence is his legal right until he has been convicted by the jury. It would be a reproach to our courts to allow a defendant to be convicted by unfair means.. A verdict should be based upon evidence, and not upon suspicions and prejudice.

In the case of *Hicks v. U. S.*, 2 Okla. Cr. 626, 103 Pac. 873, this court said:

"Unfairness, whether intentional or not, taints everything it touches, and will vitiate a verdict, unless it clearly appears from the record that there was no rational conclusion at which the jury could have arrived favorable to the defendant; and it must be absolutely clear upon this question to wipe this taint out. Such is not the condition of the record in this case."

When the first question objected to was asked, it should have been promptly excluded and rebuked, and when repeated it should have been treated as a contempt of court and punished as such. We cannot treat this matter as harmless error, because

we know from personal experience that if suspicion is permitted by law to enter the jury box it is far more damaging to a party upon trial than legal evidence would be. Legal evidence may be rebutted or explained; but no lawyer ever lived who can defend against suspicion and prejudice. Every man indicted for crime has a right to a fair trial. This right is denied when counsel for the state are permitted to throw suspicions as firebrands into the jury box against the defendant. When these suspicions are of a character to excite prejudice against a defendant, they cannot be said to be harmless. We cannot understand why prosecuting attorneys will insist on heedlessly and needlessly injecting errors of this kind into a trial. The only way we can put an end to this evil is to set aside verdicts where such practices are resorted to under circumstances calculated to injure a defendant. If this kind of practice is tolerated, the doctrine of harmless error would become a rank injustice.

Third. Counsel complain of error on the part of the trial court in not sustaining their motion for a new trial upon the ground of newly discovered evidence. As we feel compelled to grant appellant a new trial on account of the errors already pointed out, it is not necessary to discuss this question.

Reversed and remanded.

ARMSTRONG and DOYLE, JJ., concur.