## JAMES FLYNN v. STATE.

No. A-9608.   Nov. 2, 1939.
(96 P. 2d 96.)

Mathers & Mathers, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, J. The defendant, James Flynn, was by information charged in the district court of Oklahoma county, Okla., with the crime of forgery in the second degree; was tried, convicted, and sentenced to serve a term

of five years in the penitentiary at McAlester, Okla. The defendant filed his motion for a new trial, which was considered and overruled by the court; and he appeals.

The testimony on behalf of the state in substance is as follows:

Fred E. Sanders, called as a witness for the state, stated:

"My name is Fred E. Sanders. I am employed by the Liberty National Bank of Oklahoma City, Oklahoma, as assistant cashier. I was with the bank and acting in the capacity of assistant cashier on July 20, 1938, and have been since that time. I am familiar with the records of that bank, and with many of the customers as well. The instrument which you have handed me, marked state's exhibit 1, is a check which was presented to my bank for payment. The check was not paid for the reason that the bookkeeper turned the item down. By Mr. Mathers: We object to that as incompetent, irrelevant, and immaterial. By the Court: Sustained as to what the bookkeeper did. By the Witness: Well, the check was turned down because—. By Mr. Mathers: We object to that as incompetent, irrelevant, and immaterial, and a conclusion. By the Court: If he knows of his own knowledge, he may testify about it. By Mr. Marlin: Q. Do you know why payment was refused on that check? A. No account."

The witness continued:

"We did not have a customer on July 20, 1938, by the name of W. H. McWhorter or William H. McWhorter. I do not know a man by the name of W. H. McWhorter or William H. McWhorter."

On cross-examination the witness stated:

"I do not know whether Mr. McWhorter signed the check or not. The reason the check was turned down was that the records did not show that William H. McWhorter had an account at our bank. I do not know the man, W. H. or William McWhorter."

Redirect examination:

"I have been with the Liberty National Bank about seven years, and have never known a man in Oklahoma City by the name of W. H. or William McWhorter."

On re-cross-examination he stated:

"I do not mean to say as to whether or not W. H. McWhorter lives in Oklahoma City. I only stated that I did not know a man by that name."

S. L. Wilson, called on behalf of the state, stated:

"My name is S. L. Wilson. I am a pharmacist at the Roach Drug Company, down in the First National Bank Building. I have been with this company for 18 years. I have seen the check marked state's exhibit 1 before this time. The occasion for my seeing that check was that I O. K.'d it for the cashier to cash in our pharmacy. A lady, Mrs. Johnson's daughter, presented the check to be cashed. I have known her for sometime. Her mother is in business in the same building with our pharmacy. Miss Johnson was in the store at the time she indorsed the check. I do not know the gentleman who had indorsed it. The lower indorsement on the check, Vinita Johnson, is her indorsement. She just asked me to cash the check and knowing her, I O. K.'d the check. Afterwards the check came back; and Mr. Roach presented it to me. The drug store got the $11 back from this young lady's mother. That is all I know about it."

On cross-examination the witness stated:

"This lady came in; and I cashed the check at her request. I do not know James Flynn; nor do I know Mr. McWhorter, the man that signed the check. I do know the young lady, Vinita Johnson."

On redirect examination:

"I do not know whether the young man was there at the time the check was cashed or not. The $11 was paid upon the indorsement of Vinita Johnson."

Mrs. Iva Johnson, testifying for the state, stated:

"My name is Mrs. Iva Johnson. My present address is 934 First National Bank Building. Vinita Johnson, of

the same address, is my daughter. The check for $11, marked state's exhibit 1, came back; and Mr. Roach came and told me."

Upon objection being made as to the statement as to what Mr. Roach told the witness, the objection was sustained.

"By the Witness: Well, Mr. Roach called me—. By Mr. Mathers: We object to what somebody told this lady. By the Court: Sustained. By Mr. Marlin: She will tell it correctly if he will quit barking. By Mr. Marlin: Q. Don't tell what somebody told you or what you heard; just what you know. Who presented the check to you? A. That is what I was trying to say. I don't know whether Mr. Roach presented it to me or the girl in the office."

The witness further stated:

"Some one of them presented it to me. I told them I would check on it, and see if it was one of our patrons."

An objection was made to what she told them; and the court sustained the objection.

"I paid off the check. By Mr. Marlin: Q. That is all I want you to say. A. Yes, I paid off the check. By the Court: The part about what she said to somebody else or somebody said to her will be stricken, and the jury instructed to disregard it. By Mr. Marlin: Q. But you did pay Mr. Roach, of the Roach Drug Company, $11 for that check. A. I paid it to Mr. Roach."

The witness continued:

"That was the $11 check that my daughter indorsed. I was not present when the check was indorsed. I don't know Mr. Flynn, the man who is on trial; nor do I know a Mr. McWhorter. I did not know Mr. Sanders at the bank. I know Mr. Wilson, who has just testified very well. He is in the same building with me."

George Catron was called as a witness on behalf of the state, and stated:

"My name is George Catron. I know the defendant James Flynn. I came to know James Flynn on September 25th. The occasion for meeting him was that he was picked up at Shawnee. By Mr. Mathers: We object to that as incompetent, irrelevant, and immaterial, and prejudicial. By the Court: Overruled. By Mr. Mathers: Exception."

The witness continued:

"He was picked up by the police department of Shawnee on a larceny charge. By Mr. Mathers: We object to that as prejudicial and hearsay. By Mr. Marlin: Q. Did you have a warrant for the man's arrest? A. I did, yes, sir. Q. What was the warrant for? A. Larceny of an automobile by fraud. By Mr. Mathers: We object to that as incompetent, irrelevant, and immaterial; and move that the answer be stricken as prejudicial. By the Court: Overruled. By Mr. Mathers: Exception. By Mr. Marlin: Q. Then you took him into custody and brought him back to Oklahoma City and put him in jail? A. Yes, sir."

The witness continued:

"I never did know him as Ed Flynn. He gave me the name Jimmie Flynn. The police department there knew him and picked him up. I never knew him as James Flynn, or J. W. Flynn, or as James W. Flynn."

Cross-examination:

"All I know him by is Jimmie, Jimmie or James. Jimmie is all I knew him by. That is the boy right here."

Redirect examination by Mr. Marlin:

"Q. If he had any of those other names at any other place, you didn't know about it? A. No."

Vinita Johnson, testifying, stated:

"My name is Vinita Johnson. Mrs. Iva Johnson is my mother. I know the defendant. I saw him on July 20, 1938, at the Roach Drug Store. He had in his possession at the time that he saw me the check that has been marked state's

exhibit 1. I recognize it; and I indorsed it for him. I saw the defendant write James Flynn on the check just above my name there in the drug store. I had known him before the day I indorsed the check for him. He and I went in the drug store together that day I indorsed the check. He asked me to identify him; and I did. I took the check to Mr. Wilson; he knew me at the time Mr. Wilson O. K.'d it. The money was obtained on my indorsement. The check came back unpaid. My mother paid the money that had been paid out on the check. When the defendant was introduced to me his name was given as James Flynn. I never knew him as Jimmie Flynn or as Ed Flynn; nor have I ever known him as James William Flynn, or as James W. Flynn. I didn't know his middle initials. I have known him about a year now, since sometime this spring. I always called him Jimmie. I think every one called him Jimmie. That is his name, true and correct. Something was said about buying a Coca Cola or a soda pop. He said he had a check that he wanted cashed, and went to the cashier to get it cashed, and wanted me to identify him; and I went and identified him, because I knew it was his name, and that it was made out to him. The check Mr. Marlin has is the check I indorsed. He signed his name on the check in my presence. So far as I know, he signed his right name. I signed my name, Vinita Johnson. Mr. Wilson O. K.'d the check. The check was returned, because they said that Mr. McWhorter did not have any account in the Liberty National Bank; and my mother paid the $11. The defendant paid $4 of the $11 to us. When I advised Mr. Flynn that the check had been returned, he said he would try to find Mr. McWhorter. I had called him quite awhile before he paid the $4 on the bad check. He did not pay the $4 the first time I called him. It was after I had asked him for quite awhile. I asked him quite a few times for the money for my mother, because she had been so nice to pay it; and he said he would pay $5; and one day he paid $4. He said he would get the rest of it in a few days, but left before I could get any more. He claimed to have tried to locate Mr. McWhorter. I don't know Mr. McWhorter."

Redirect examination:

"If the defendant knew Mr. McWhorter, or there was such a man, he could never find him. I never was in Tulsa where he might have been called Jimmie Flynn. I never knew him in Granite; nor did I ever know him at Drumright as J. W. Flynn. I never knew him in Tulsa as James W. Flynn."

Re-cross-examination by Mr. Mathers:

"I know nothing about anything that he did wrong in violation of the law. I know nothing about it except about this time. I don't know he ever worked. By Mr. Marlin: Q. Now, since he asked you that, I will ask you if you didn't know he had been to Granite for forgery? By Mr. Mathers: We object to that as incompetent, irrelevant, and immaterial. By Mr. Marlin: You went into this man's character, and I have the right to cross-examine her, and go into it, too. By the Court: Overruled and exception. By Mr. Marlin: Q. You didn't know him at Granite in 1929, when he did six months for a bogus check? A. No, sir. By Mr. Mathers: We object to that as incompetent, irrelevant, and immaterial, and prejudicial. By the Court: Overruled. By Mr. Mathers: Exception. By Mr. Marlin: Q. How about 1930, two counts for forgery, when he went to Granite for a year? A. No, sir. By the Court: It is evident she don't know anything about that. By Mr. Mathers: We object to it as incompetent, irrelevant, and immaterial, and prejudicial. By Mr. Marlin: The only reason I am asking that—and I am not arguing it—is that he wanted to leave the impression with these twelve men that he was an upright man. By the Court: Well, I think you have gone far enough along that line with this witness. By Mr. Marlin: That is all. By Mr. Mathers: I move the court to strike and instruct the jury to disregard the statements and questions and answers propounded to the witness in the last three or four questions. By the Court: Overruled and exception."

The check was introduced in evidence.

At the close of the state's testimony in chief, the defendant demurs to the evidence introduced by the state for the reason the same is insufficient to constitute a cause of action as charged in the information, or to show any other violation of the laws of the state of Oklahoma.

"By the Court: Overruled and exception."

The defendant, testifying in his own behalf, stated:

"My name is James William Flynn. I live at Shawnee, Oklahoma. I go by the name of James Flynn; also, by the name of Jimmie Flynn. James W. Flynn is my correct name. The instrument marked state's exhibit 1 is a check I received from Mr. McWhorter. He gave me the check at that Manhattan Park or the one next to it. I don't remember which one now. He gave it to me the date written on the check. He wrote the check out and gave it to me. Miss Vinita Johnson O. K.'d the check and had it cashed. I learned that the check was returned when Mrs. Johnson called me over the phone. Mrs. Johnson is Vinita's mother. I did not go down and talk to her the day she called me. I have seen Mr. McWhorter once since he gave me the check, and told him about it. I made a $4 payment on the check to Miss Vinita Johnson. It was three or four days after she called me the first time that I made the $4 payment. It was the 24th of September that I was arrested. I have been in jail since that time. I have not had an opportunity to see Mr. McWhorter or hear from him since I have been in jail."

Cross-examination by Mr. Marlin:

"Q. You have been in jail since that time? A. Yes, sir. Q. Not just on this forgery check charge? You have been in jail on larceny of an automobile, have you not? By Mr. Mathers: We object to that as incompetent, irrelevant, and immaterial. By Mr. Marlin: I have a right to show why he was in jail. By the Court: Overruled and exception. By Mr. Marlin: Q. You also have

a charge of larceny of an automobile against you? A. Yes. Q. You were in jail on that at the same time, too, were you not? Q. Are you the same James Flynn that went to Granite in 1929 for forgery? By Mr. Mathers: We object to that as incompetent, irrelevant, and immaterial, and prejudicial. By the Court: Overruled and exception. By Mr. Marlin: Q. Is that right? A. Yes, for writing checks on my father. Q. Well, you went to the penitentiary for it, didn't you? A. Yes, sir. Q. Now, in 1931, did you plead guilty to, or were you convicted of forgery on two counts, and sent to the penitentiary for a year each? A. Writing more checks on my father. Q. Well, he let you go to the penitentiary, didn't he? A. Yes. Q. Well, then, James William Flynn, in 1934, what is this A and B investigation, fined $40 in the police department? By Mr. Mathers: We object to that as incompetent, irrelevant, and immaterial, and prejudicial. By the Court: Overruled and exception. By Mr. Marlin: Q. You are the same James William Flynn there? A. Fined $40 in the police department? Q. Yes, in 1934. By the Court: Oklahoma City police department? By Mr. Marlin: Oklahoma City police department. Q. They tagged you as No. 5046? By the Court: Do you remember that? A. I don't remember of ever being fined $40. By the Court: If you don't remember, just say so. By Mr. Marlin: Q. How about James William Flynn in the police court, fined $40? By Mr. Mathers: We object to that as incompetent, irrelevant, and immaterial, and prejudicial. By the Court: Overruled and exception. By the Court: Q. Do you remember that? A. I don't remember that. By Mr. Marlin: Q. How old are you? A. Thirty years."

The witness continued:

"I have spent part of my life as a pugilist; and I am now an ex-pugilist. The state's exhibit 1 here, I indorsed that, and got the little lady to cash that over at the drug store."

Redirect examination by Mr. Mathers:

"Q. Sit down to the table and write the name 'James Flynn'. Q. Now, will you write the name 'William H.

McWhorter'? By the Court: This is written with pen and ink. By Mr. Mathers: May I have a pen and ink? By the Court: Surely. Take another piece of paper and start over again. By the Witness: How is that name again? By the Court: William H. McWhorter, M-c-W-h-o-r-t-e-r. By the Witness: I didn't get how you spelled the last name. By the Court: Just write it out like you think it ought to be. I guess that will be all right. By the Witness: M-c-Q-u-a-r-t-e-r? By the Court: McWhorter, yes. By Mr. Mathers: We will ask that this be marked Defendant's Exhibit 1. Do you have any objection? By Mr. Marlin: We object to it as incompetent, irrelevant, and immaterial, the writing having been made subsequent to the time of the forgery, and furthermore, he is not charged with writing the name, McWhorter'. He is charged with passing a forged check. We do not say that he wrote the name, 'McWhorter', on it. By Mr. Mathers: We offer that as Defendant's Exhibit 1, and this other one as Defendant's Exhibit 2. By the Court: Let them be admitted over the objection of the state." -

Re-cross-examination by Mr. Marlin:

"Q. Since 1929, from time to time, you have been charged with bogus checks and forged writings, have you not? A. No, sir. Q. James Flynn, you went to Granite in 1929 for a year for forgery, did you not? By Mr. Mathers: We object to that as incompetent, irrelevant, and immaterial, and repetition. By the Court: That is repetition. By Mr. Marlin: All right. That is all."

The foregoing is all the material testimony offered by the state and the defendant.

The defendant, in his assignment of errors, alleges:

(1) The trial court erred in overruling the motion of the defendant below for a new trial, duly excepted to at the time.

(2) The court erred in permitting the county attorney to introduce certain evidence, over the defendant's below objection, duly excepted to at the time.

(3) Because of errors of law occurring during the course of the trial, duly excepted to at the time.

(4) Because the court erred in overruling the defendant's below demurrer to the state's evidence, at the close of the state's case, duly excepted to at the time.

(5) Because the verdict of the jury is contrary to the law.

(6) Because the verdict of the jury is contrary to the evidence.

(7) Because there was no legal or competent evidence to support the verdict of the jury.

The assignment of errors will be considered together, as they raise the questions of whether or not the defendant was accorded a fair trial, and did the court permit the introduction of testimony prejudicial to the rights of the defendant, and by so doing, deprive defendant of a fair and impartial trial?

The defendant was tried upon an information charging that he did willfully, unlawfully, and feloniously commit the crime of forgery in the second degree, in a manner and form as follows to wit: that is to say, the defendant in the county and state aforesaid, and on the day and year aforesaid, did then and there willfully, unlawfully, feloniously, and with intent to cheat and defraud, sell, utter, exchange and deliver to Vinita Johnson for a valuable consideration, a false and counterfeit check; and that in presenting this check to Miss Johnson, it is contended that the defendant did so with the felonious intent to defraud the same; uttered it, and passed it as true and genuine; and that the said defendant knew that the said check was forged and counterfeit; the name of William H. McWhorter signed to said check, being in truth and fact,

a forgery, and not the true signature of said William H. McWhorter, and not done with his knowledge and consent.

The testimony in this case is sufficient to sustain the conviction of the defendant, if the defendant was accorded a fair and impartial trial, according to the law and legitimate evidence presented to the court and jury.

The defendant argues at great length that the court committed error in permitting a deputy sheriff, by the name of George Catron, to testify over his objections that the defendant James Flynn was picked up by the police at Shawnee on a larceny charge; that the court erred in permitting this testimony to be introduced for the reason that it is based upon hearsay; and was incompetent and immaterial, and should not have been permitted to have gone to the jury, as the witness was not present when the defendant was arrested.

It is urged by the defendant that the court committed further error in permitting the Deputy Catron to testify over his objections that he arrested James Flynn for larceny by fraud of an automobile.

In the trial of all criminal cases, whether guilty or innocent, the defendant is entitled to a fair and impartial trial, and entitled to have only competent evidence introduced to the court and jury against him.

The testimony of Deputy Catron stated that the defendant was picked up at Shawnee by the police department over there; and his testimony as to the arrest on a charge of larceny of an automobile was not admissible in evidence in the case in which the defendant in this case was charged.

This court in many cases has held that it was inadmissible to introduce evidence before the jury against a defendant of other crimes or offenses unless they related

to and show a system and scheme carried out by the defendant, leading up to and having some connection with the offense with which the defendant was charged.

In Jones v. State, 20 Okla. Cr. 154, 172, 201 P. 664, 670, this court in the body of the opinion stated:

"It is not admissible to show the bad character of the defendant until after the defendant himself puts his good character in issue, and then only by showing his general reputation, and not by particular acts. Evidence of other criminal acts not in issue in the case should be excluded; such testimony has a tendency to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the charge at issue, or to take proof of it as justifying the defendant's condemnation, irrespective of his guilt of the crime for which he is being tried. Moreover the use of alleged particular acts, ranging over the entire period of the defendant's life, makes it impossible for him to prepare to refute the charges, any or all of which may be mere fabrications. The rule as above stated has received the judicial sanction of the courts of this country for more than a century. Underhill on Evidence, § 82; 1 Wigmore on Evidence, 233; 10 R. C. L. 953; Porter v. State, 8 Okla. Cr. 64, 126 P. 699; Corliss v. State, 12 Okla. Cr. 526, 159 P. 1015."

In Porter v. State, 8 Okla. Cr. 64, 126 P. 699, this court said in the first syllabus:

"Where the character or reputation of the accused is not an element of the crime charged, the prosecution cannot put it in issue by offering evidence of his bad character, unless the defendant first offers evidence of his good character. The prosecution may then rebut it by evidence of bad character."

In the third syllabus of Porter v. State, supra, this court said:

"It is improper to ask a witness if he has ever been indicted, arrested, or imprisoned, before conviction, for any offense whatever. Where such question is asked, it

should be promptly excluded, with a rebuke to the lawyer asking the same; and if the question is repeated it should be treated as a contempt of court and punished as such."

The record in this case shows that the state called George Catron as a witness to testify on behalf of the state; and before any testimony had been given or offered by the defendant, the court permitted the witness Catron to state that the defendant was picked up by the police department of Shawnee on a larceny charge, which was objected to by the defendant for the reason that it was hearsay evidence and incompetent, which objection was overruled; and the defendant was required to answer. The witness was also asked if he had a warrant for the defendant; and over the objections of the defendant, was required to answer, 'Yes, for the larceny of an automobile by fraud." The witness Catron was further permitted to testify that he took the defendant into custody, brought him back to Oklahoma City, and put him in jail.

We are of the opinion that this testimony was inadmissible because, if true, it would refer to a separate and distinct crime; and its admission cannot be otherwise than prejudicial to the defendant.

Evidence of an offense other than the one charged is admissible only when it tends to prove the offense charged. To be competent and admissible, it must have some logical connection with the offense charged.

The hearsay testimony that the defendant was picked up in Shawnee, and the statement of the officer that he had a warrant for the arrest of the defendant has no bearing whatever upon the charge for which the defendant was being tried, and was not only prejudicial to the rights of the defendant, but was in violation of what the courts of this state have many times held.

Testimony of the character which the court permitted to go to the jury, as stated by the witness Catron, was inadmissible for the reason that it is in the nature of hearsay and related to a fact that the state had no right to introduce in evidence. The fact that a warrant might be out for a man charged with a crime other than the one for which he is being tried is not admissible as direct evidence in the case he is on trial for; and if permitted to be introduced, it is against the principles of the law in securing to the defendant a fair and impartial trial by legal and competent testimony.

The minds of this court are not clear as to why the state, when the defendant was being prosecuted on a charge of passing a bogus check or having one in his possession, offered the testimony of the witness Catron, it being incompetent, irrelevant, and immaterial, and prejudicial to the rights of the defendant.

The question as to where the defendant was picked up (using the language of the witness) is immaterial to the charge upon which the defendant was on trial, as there is no testimony showing that the defendant was a fugitive from justice; and the defendant states his home was in Shawnee.

In this case the defendant was charged with a specific crime; and the fact that the witness may have had a warrant for the defendant's arrest on a different charge from the one he was on trial for did not make such testimony admissible; and the court erred in admitting the same over the defendant's objections.

The defendant stated that he had tried to locate McWhorter, the man whom he claims signed the check that he had, and that he had been unable to do so. He was asked by his attorney these questions:

"Q. When were you arrested? A. It was on the 24th of September, 1938. Q. Have you been in jail since that time? A. Yes, sir. Q. Have you had an opportunity to find Mr. McWhorter, or see him, or hear from him since you have been in jail? A. No, sir."

In Miss Vinita Johnson's testimony on cross-examination, the defendant's counsel asked her the following question:

"Q. You did not know anything he had done wrong, in violation of the law, anything he ever did that was improper? A. I know nothing about him except about that time. I don't know as he ever worked."

The testimony of Miss Vinita Johnson was conclusive that she only knew the defendant here in Oklahoma City, and that she did not know whether he worked or not. The witness' statement clearly shows that she made no effort to put the character of the defendant in issue; nor can this court interpret the questions propounded to the witness as being questions that put the defendant's character in issue. However, Mr. Marlin on redirect examination asked Miss Johnson the following question:

"Q. Now since he asked you that, I will ask you if you didn't know he had been at Granite for forgery?"

And over the objections of the defendant, the court required the witness to answer; and the witness said, "No, sir."

He also asked her if she did not know the defendant at Granite in 1929, when he had six months for a bogus check; also about 1930 on two counts for forgery, when he went to Granite for a year; and she answered, "No, sir."

All of these questions and answers were admitted over the objections of the defendant. The state contends that the statements of the defendant that he had been in jail

since his arrest and of the witness Miss Johnson that she knew nothing about the defendant, except this check for which he was being tried, put the character of the defendant in issue.

With this contention this court cannot agree, as the witness Vinita Johnson positively stated that she knew nothing about the defendant, excepting the incident of the check here in Oklahoma City; and the statement of the defendant that he had been in jail since his arrest in no way whatever tends to put in issue the good character of the defendant; and the questions and answers propounded to the witness Vinita Johnson were incompetent, irrelevant, and immaterial, and prejudicial to the rights of the defendant on trial for a specific charge, as the questions asked by the state in no way whatever tended to establish the charge against the defendant in this case, and only tended to bias and prejudice the minds of the jurors against the defendant.

In Kirk et al. v. State, 11 Okla. Cr. 203, 145 P. 307, in the first paragraph of the syllabus, the court stated:

"The state cannot attack the character of a defendant unless he first puts that in issue by introducing evidence of his good character."

In Smith v. State, 14 Okla. Cr. 348, 171 P. 341, in the third paragraph of the syllabus, this court said:

"Evidence of an offense other than the one charged is admissible only when it tends to prove the offense charged. To be competent and admissible, it must have some logical connection with the offense charged."

In the fifth paragraph of the syllabus of Smith v. State, supra, the court stated:

"Section 5046, Rev. Laws [1910], 12 Okla. St. Ann. § 381, permits the proof of a prior conviction of a defen-

dant in a criminal case for the purpose of affecting his credibility. This proof may be made either by the record or by the cross-examination of the defendant, and cross-examination as to other separate and distinct transactions and offenses is not permissible, unless such testimony tends to prove the commission of the offense charged, and should in general be limited to matters pertinent to the issue, or such as may be proved by other witnesses."

In Cline et al. v. State, 57 Okla. Cr. 206, 47 P. 2d 191, in the first paragraph of the syllabus, this court stated:

"Conduct of prosecuting attorney in persistently cross-examining the accused by assumptions and insinuations as to previous unlawful acts and transactions, in spite of rulings against him, held improper and prejudicial."

In the third paragraph of the syllabus of Cline et al. v. State, supra, the court stated:

"It is the trial court's duty to uphold the guaranty of a fair and impartial trial to all persons whether innocent or guilty."

In the body of the opinion in Cline et al. v. State, supra, the court said:

"It is a fundamental principle of criminal law that the character of the defendant cannot be impeached or attacked by the state, unless he puts his character in issue by introducing evidence of good character. Kirk v. State, 11 Okla. Cr. 203, 145 P. 307."

The court further stated:

"We have repeatedly condemned this practice."

The defendant in this case may be guilty of the charge for which he was tried and convicted; but in the trial of the case, he was entitled to have only competent evidence introduced against him, and the jury advised as to the law applicable to the facts in the case.

The defendant did not deny that he had presented this check, and got Miss Johnson to indorse the same, and cash it; but his defense is that a man by the name of W. H. McWhorter had signed the check, and given it to him. Whether this be true or not, this court is in doubt.

Defendant's attorney asked him if he had been in jail since his arrest, September 24, 1938; and he answered, "Yes, sir."

On cross-examination of the witness, Mr. Marlin, assistant county attorney, asked the defendant if he had been in jail since his arrest. The witness answered, "Yes, sir."

"Q. Not on this forged check charge? You have been in jail on larceny of an automobile, have you not?"

The defendant objected to the question and answer, as the defendant had only testified that he had been in jail since his arrest.

Mr. Marlin stated: "I have a right to show why he is in jail."

The defendant's objection was overruled, and exception saved.

Mr. Marlin proceeded then to ask the defendant if he did not have a charge of larceny of an automobile against him; and he answered, "Yes."

All of these questions and answers asked by Mr. Marlin were objected to by the defendant; and he was asked about having been in the reformatory at Granite, Oklahoma, and also in the penitentiary for check forgery, and showed specifically the character of each offense that he claimed the defendant had been in the reformatory or penitentiary for. The defendant was, also, asked about a $40 fine in police court; and he did not remember anything about that.

The court said to the defendant: "If you don't remember, just say so."

Mr. Marlin then set out about James W. Flynn in the police court, fined $40. This was objected to, overruled, and exception saved.

"By the Court: Q. Do you remember that? A. I don't remember that."

Mr. Marlin then asked the defendant:

"Q. Since 1929 from time to time you have been charged with bogus checks and forged writings, have you not? A. No, sir."

The assistant county attorney, Mr. Marlin, commenced asking him how about his being incarcerated in Granite; but the court said: "That is repetition;" and the examination closed.

No evidence was offered on behalf of the state to prove the defendant had been fined $40 in the police court, and to these questions about which the state inquired.

All of the facts brought out by the state with reference to former convictions, over the objections of the defendant, were attacking the character of the defendant, and also putting his character in issue before the defendant had put his character in issue by introducing evidence of good character.

In Smith v. State, supra, in the fourth paragraph of the syllabus, the court stated:

"A defendant, by availing himself of the privilege of testifying in his own behalf, thus waives his constitutional privilege and has all the rights and is subject to the same rules of cross-examination and impeachment as other witnesses."

This court has repeatedly adhered to the rulings by stating that when the state attempts to introduce testimony of prior convictions of a defendant, it may introduce prior convictions in criminal cases for the purpose of affecting his credibility, which proof by the state may be made either by the record or cross-examination of the defendant. Cross-examination as to other separate and distinct transactions and offenses is not permissible, unless such testimony tends to prove the commission of the offense charged, and should in general be limited to matters pertinent to the issue, or such as may be proved by other witnesses.

In this case there was no denial by the defendant that he did have the check for $11; that he got Miss Johnson to indorse it for him. The defendant admitted that Miss Johnson indorsed the check and had it cashed for him; and, therefore, there was no necessity for introducing testimony to impeach the defendant on that point, or to prove that the check was bogus. The fact that the check was returned unpaid from the bank shows conclusively that McWhorter had no funds in the Liberty National Bank from which the check might be paid.

The questions propounded to Miss Johnson by the state and to the defendant with reference to the commission of other crimes were not permissible for the reason that the offenses inquired about did not tend to prove the commission of the offense charged, and for which the defendant was on trial; and the court should have sustained the objections to the introduction of such testimony for two reasons:

(1) That it did not tend to establish or prove the commission of the offense for which the defendant was on trial.

(2) That it put the character of the defendant in issue before the defendant had placed his character in issue by evidence of former good character.

Many of the questions propounded by the state to the defendant on cross-examination were denied by the defendant; and the state failed to introduce any proof to contradict him. The objections of the defendant to these questions should have been sustained.

Guilty or innocent, the defendant was entitled to have a fair and impartial trial; and it is the duty of the county attorney, as well as the trial judge, to see that the defendant is accorded that fair and impartial trial guaranteed to him by the Constitution and the laws of the state.

It is plain to be seen that the prosecution in this case was anxious to sustain a conviction. There was no desire of the state to go beyond what the law permits it to do in introducing testimony; yet in the heat of the trial of a case, they often forget and go beyond the law and the opinions of our courts on the questions about which they inquire.

The flagrant impropriety of the cross-examination of the defendant by the state is self-evident. Its effect upon the jury could not fail to bias and prejudice the jury against the defendant. It does not seem that this examination by the state of this defendant and Miss Johnson was inadvertent, but was purposeful is apparent; and it would be discreditable to counsel's competency as attorney for the state to impute to him lack of knowledge of the impropriety of the questions asked on his cross-examination of the defendant.

In Vickers v. United States, 1 Okla. Cr. 452, 98 P. 467, 473, this court said:

"A public prosecutor is presumed to act impartially in the interest only of justice. If he lays aside the impartiality that should characterize his official action, to become a heated partisan, and by vituperation of the prisoner, and appeals to prejudice, seeks to procure a conviction at all hazards, he ceases to properly represent the public interest, which demands no victim, and seeks no conviction through the aid of passion, sympathy, or resentment. The only way to secure fair trials is to set aside the verdicts so procured."

In Watson v. State, 7 Okla. Cr. 590, 124 P. 1101, this court in the syllabus stated:

"The repeated asking of incompetent questions, which clearly have for their purpose the intimation of something to the jury that is either not true or not capable of being proven if true is wrong, and such conduct of counsel is not cured because the court sustains objections to the questions."

In all cases the defendant is entitled to the full benefit of the legal presumption of innocence and cannot be properly convicted until his guilt is established beyond a reasonable doubt.

Considering all the facts as shown by the testimony in this case and the questions propounded to the defendant and his witnesses, we hold that the defendant was not accorded a fair and impartial trial as guaranteed to him by the Constitution and laws of this state; and for the reasons stated in this opinion, the judgment of the trial court is reversed, with directions if the defendant is retried to proceed in accordance with this opinion.

The warden of the state penitentiary will surrender defendant James Flynn to the sheriff of Oklahoma county, who will hold him in custody until he shall be discharged or his custody changed by due course of law.

DOYLE, P. J., and BAREFOOT, J., concur.