Marvin James LOVE, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12892.

Court of Criminal Appeals of Oklahoma.

Oct. 19, 1960.

Rehearing Denied Dec. 28, 1960.

Second Petition for Rehearing Denied April 19, 1961.

Raymond Burger, Pauls Valley, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Marvin James Love, hereinafter referred as the defendant, was charged by information in the district court of Garvin County with the crime of murder. He was tried before a jury, found guilty of manslaughter first degree and sentenced to 35 years in the Oklahoma State Penitentiary. Defendant appeals to this Court upon numerous contentions of error. However, the briefs filed herein present two propositions and the advanced argument is confined to these two contentions of error.

In substance, defendant contends that the court erred in overruling defendant's objection to question propounded by the county attorney relative to an offense unrelated with the crime for which the defendant was being tried. Also, that the court erred in permitting the state to present rebuttal testimony of one Samuel Hankins on a collateral matter. Defendant's second proposition contends that the misconduct of the county attorney in attempting to elicit evidence before the jury which he knew, or should have known, was incompetent, was prejudicial and highly inflammatory, all of which prohibited the defendant from having a fair and impartial trial.

The charge filed herein grew out of an altercation between defendant, the deceased, and two brothers and a friend. A fight ensued involving fists and a hatchet in which the defendant was whipped. He later obtained a shotgun from his car and fired a fatal shot into the body of C. P. James who expired shortly thereafter. Thus, the charge of murder which resulted in a conviction of manslaughter. During the course of the trial defendant testified relative to getting the shotgun from under the seat of his car, on cross-examination the following interrogation took place about which defendant complains:

"Q. And you knew that the gun was in the car, didn't you? A. No, I didn't.

"Q. You didn't know it? A. No.

"Q. Well, you had used it before, out of that car, hadn't you? Hadn't you used this gun before? A. Out of that car that I was in? No, I didn't use that gun.

"Q. You used it out of some car, haven't you? A. No, I haven't.

"Q. You have never had this gun before in your hands? A. Only when I'm hunting.

"Q. Never pulled it on anybody else? A. No.

"Q. Never had it on anybody else? A. No.

"Q. Never shot anybody else with this gun? A. No, I haven't."

Also the county attorney propounded the following questions to witness Kuykendall:

"Q. Did you hear whether or not that he had used a shot gun on someone last winter? A. No sir.

"Q. And you would say that the man had a good reputation and still you heard general talk on him being in other altercations? A. Yes sir, I say he has a good reputation.

"Q. Even though he might have shot somebody else? A. I don't know of him shooting anyone else."

Also, the following questions were asked and answered by witness J. E. McCall:

"Q. And you hadn't heard that he had been in a shooting and a stabbing? A. Well I heard a little bit about this deal down here. I couldn't say.

"Q. And would it have made any difference to you in your testimony today if you had heard that he had been into a stabbing and a shooting back in February of 1959? A. I don't think so."

Defense argues that these questions were improper and prejudicial to the rights of the defendant and cite as authority therefore Wright v. State, Okl.Cr., 285 P.2d 445, 446, which states in syllabi 4:

"The general rule is that evidence, which in any manner shows or tends to show that the accused has committed an offense other than that for which he is on trial and wholly independent thereof, even though an offense of the same sort, is inadmissible, since accused must be convicted, if at all, by evidence which shows him to be guilty of the offense charged."

Also, defendant cites the case of Neely v. State, 60 Okl.Cr. 99, 61 P.2d 741, 743, where the court said:

"The repeated asking of incompetent questions, which clearly have for their purpose the intimation of something to the jury that is either not true or not capable of being proven if true, is wrong, and such conduct of counsel is not cured because the court sustains the objection to the question."

This court concedes that these questions were highly improper. The attorney general in his brief does not deny that they were improper and inadmissible, but contends that defendant waived the right to have the assignment considered on appeal as a result of failure to object, and cites as his authority the case of Byrum v. State, 54 Okl.Cr. 173, 15 P.2d 1096, 1097, where this Court said relative to a similar situation where the defendant was asked on cross-examination, "Did you plead guilty and pay a fine for whipping your wife?" to which defendant answered, "No, sir; I did not."

"No objection was made to this question. Counsel evidently preferred to have the benefit of defendant's answer rather than object to the question. The answer was favorable to the defendant and of course he was not prejudiced thereby, and if he was not prejudiced by the answer, he could not be prejudiced by the question itself."

The Court went on to say:

"Much of this examination was improper, but, before this court can consider it, counsel must object and get a ruling of the court thereon. If counsel make no objections in the lower court, they cannot object in this court. Gritts v. State, 6 Okl.Cr. 534, 118 P. 673, 120 P. 669; Hunter v. State, 10 Okl.Cr. 119, 134 P. 1134, L.R.A.1915A, 564, Ann.Cas.1916A, 612; Meiggs v. State, 16 Okl.Cr. 557, 185 P. 450."

Likewise this court stated in Thigpen v. State, 96 Okl.Cr. 309, 253 P.2d 1083:

"It is the duty of counsel to raise at the proper time, all objections to the proceedings and save exceptions to the court's adverse rulings thereon, and when this is not done, they will be treated as waived."

Counsel for the defendant attempts to justify his failure to object by the following statement reciting defendant's brief:

"* * * that if counsel for defendant objected to such line of questions, the inference would be drawn by the jury, that plaintiff in error had in truth and in fact, done the thing which was asked of him by the County Attorney and that by making objections, we were trying to hide this fact from the jury."

█ The Court is thoroughly cognizant of the validity of this argument and is all the more justification for this Court's numerous decisions admonishing prosecutors to refrain from propounding questions which clearly have for their purpose the insinuations that the defendant is guilty of some other offense when they know or should know that they could not prove the unrelated offenses by competent testimony.

This Court recognized the danger of compulsory objections by defense counsel in a very early case, Appleby v. State, 11 Okl. Cr. 284, 146 P. 228, 229, wherein the Court said:

"In jury trials incalculable harm is often done by counsel in asking known incompetent questions in the hearing of the jury and thereby forcing the adverse party to object to them also in the hearing of the jury, which manifests a fear of the incompetent ques-

tions, and gives emphasis to the harmful matter they are supposed to contain."

Failure to object to incompetent questions has always created a difficult problem for this Court. Defense counsel must never be permitted to lay behind the log and hope for reversal upon the question to be considered. On the other hand a defendant is entitled to a fair and impartial trial in every sense of the word and in many instances an injustice would be perpetrated if by inadvertence on the part of defense counsel or the trial judge, defendant was convicted as a result of incompetent and prejudicial testimony without objection. In every instance, the mistake is at the expense of the defendant. However, the general rule favors objection being made and exceptions saved in order to have the matter considered on appeal. It is agreed that the questions were improper and had timely objections been made the court's opinion would have been easy to formulate.

■ The record reflects that defense counsel was evidently concerned about the effect of the continued inference of the county attorney as to another shooting. They placed on the stand a Mrs. Harroway and at one point defense counsel asked the following question:

"Q. Mrs. Harraway, back in February of this year (1959) according to the County Attorney's questions of other witnesses, he has referred to some kind of a cutting and shooting scrape in your place of business. Has there been another shooting in your place of business? A. No. There was a cutting in my business, but it was just a bunch of kids in there * * * well, Marvin was up here by the pop box by me, and when he turned to go down that way, this other boy had made it and some more boys standing between, and he was trying to explain to them that he wasn't even in the argument, but this other boy thought he was; and when I reached for him this other boy was cutting at Marvin, and I got 23 stitches in my hand, and as I went on by, I mean they went together, and this boy did cut Marvin, and they were fighting, and I went on out the cafe to go across the street and call the law, and that's all I know about that, but there wasn't no shooting."

After the defense had rested the state produced a rebuttal witness, Mr. Hankins, who testified he was present the night at Pat's Place and saw the defendant. He further testified:

"Q. Did you at any time see the defendant at the place there that night with a weapon of any kind? A. Well, after he come outside, I did.

"Q. Did he have the weapon when he came out? A. Yes, sir.

"Q. And he came from where? A. He came from outside of the building, out of Pat.s."

* * * * * *

"Q. Well, did you say anything to him? A. Yes, sir. I said something.

"Q. What did you say to him? A. I said, "no, Man, not me."

"Q. Why did you say that? A. Because I was standing beside this tree, and as I come out from around the tree, he swung the gun around toward me, and I said, 'No, not me'. I didn't know what was going on.

* * * * * *

"Q. But you saw this defendant on that night with a shotgun in his hand? Is that right? A. Yes, sir."

The testimony was received over the objection of the defendant with the following admonition:

"By the Court: The objection is overruled but the jury will be instructed that this evidence is received only for impeachment purposes."

Defense moved for mistrial which was overruled. No doubt this constitutes rebuttal upon a collateral matter and ordinarily would have been inadmissible as it was wholly immaterial to prove the guilt or innocence of the defendant upon the charge

for which he was being tried. In support of defendant's contention that this constituted error he cites Pressley et al. v. State, 71 Okl.Cr. 436, 112 P.2d 809, 810:

"Where the defendants are cross-examined as to other crimes alleged to have been committed by them, which have no connection with the offense charged, upon which alleged offenses, convictions have not been obtained, and the defendants deny the commission of the alleged offenses, it is error to permit the state to introduce witnesses in rebuttal, with the view of impeaching the testimony of the defendants by showing the commission of the alleged crimes, as a witness cannot be impeached upon collateral matters."

Also see Flynn v. State, 68 Okl.Cr. 72, 96 P.2d 96, 102; Nemecek v. State, 72 Okl.Cr. 195, 114 P.2d 492, 135 A.L.R. 1149.

The attorney general contends that the rebuttal testimony as to the unrelated offense was first brought out by defense counsel and the state was justified in refuting defense witness Hankins. He cites as authority the case of Radney v. State, 36 Okl.Cr. 240, 253 P. 913, wherein the court passed upon a similar matter:

"The defendant introduced an irrelevant issue by offering evidence of the details of a difficulty between the deceased and the son of the defendant, occurring in the absence of the defendant. The state made no objection, but offered evidence to contradict the account given by the son of the defendant. This rebuttal testimony was objected to by the defendant upon the ground that it was impeachment upon a collateral issue and of a transaction not in the presence of the defendant. Held, that the defendant may not complain of an error which he himself has invited, or of which he has waived, either expressly or impliedly."

The briefs presented for both the state and the defendant are excellent briefs and both appear to support these contentions with adequate authority. It is the opinion of your writer that entirely too much emphasis was placed upon a previous alleged offense which was immaterial to the case at bar. The assignment argued by defense counsel possesses merit and borders closely upon reversible error. A review of the entire record leads the court to believe that a possibility exists that the improper cross examination of the county attorney may have left insinuations and inferences that affected the jury in their assessment of the punishment. The court is of the opinion that justice would be best served if the judgment and sentence of the trial court was modified so that defendant would serve 25 years in the penitentiary instead of 35 years, and it is hereby ordered and the case is otherwise affirmed.

POWELL, P. J., and BRETT, J., concur.