Urbie Pennington RODGERS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13964.

Court of Criminal Appeals of Oklahoma.

April 19, 1967.

As Corrected May 12, 1967.

Ollie W. Gresham, Tulsa, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Urbie Pennington Rodgers, hereinafter referred to as Defendant, was charged, tried and convicted for the crime of Burglary of a Coin Operated Machine After Former Conviction of a Felony, and from the judgment and sentence rendered against him fixing his punishment at from ten (10) to thirty (30) years imprisonment in the State Penitentiary at McAlester, a timely appeal has been perfected to this Court.

The sole question presented in the brief of Mr. Ollie Gresham, counsel for the defendant, and presented to this Court in oral argument is: "The plaintiff in error, for his assignment in error, argues that the trial court erred in overruling his motion for a mistrial because the Court allowed testimony about possession of narcotics, which would be a separate and different offense than the offense the defendant was charged with herein—the offense of Burglary of a Coin Operated Machine."

From the record at pages 53, 54 and 55 of the Casemade, in redirect examination, the following appears:

"Q. Let me ask one or two more questions. Mr. Truesdale has brought out what the defendant had on his person at the time he was arrested. At the time you obtained this property from him, did you observe any medicinal paraphernalia or what ap-peared to be medicinal paraphernalia or medicine—pills?

A. No sir, he did not have any on his person, no sir.

Q. Did you see any?

DEFENSE COUNSEL: If the Court please, I am going to object to any further inquiry along this line. He has answered the question, he had none on his person. I believe it is immaterial, he is not charged with anything of that kind.

BY THE COURT: Well, I didn't get the last question. I don't know whether it is or not.

BY THE REPORTER: Did you see any?

BY THE COURT: Read the question above that.

QUESTION READ BY THE REPORTER: At the time you obtained this property from him, did you observe any medicinal paraphernalia or what appeared to be medicinal paraphernalia or medicine—pills?

DEFENSE COUNSEL: And he answered that "No."

FURTHER QUESTION READ BY REPORTER: "Did you see any?"

ASSISTANT COUNTY ATTORNEY: Well, I was going to ask about the car, your Honor. I think the officer said he was in the vicinity of the car. I will qualify it this way: Did you have occasion to look inside of the car, the Thunderbird?

A. Yes sir.

Q. And with reference to the things I have asked you about, did you see any such articles or items inside of the car, yourself?

DEFENSE COUNSEL: If the Court please, I am going to object, it's already been asked and answered.

BY THE COURT: Well, the objection will be overruled. He hasn't asked that before.

A. Yes, we found a small package of pills, red colored, what we commonly refer to as red birds."

At pages 58 and 59 of the casemade on further re-direct examination, the following appears:

"BY THE ASSISTANT COUNTY ATTORNEY:

Q. You say that the defendant here gave you—said it was all right to look in the trunk?

A. Yes sir.

Q. You see anything else other than the red birds and tire tools and that sort of things ordinarily kept back there?

A. Yes, I don't recall the items specifically. I didn't * * * there was some other property turned in from the car, but I didn't get it myself.

Q. At what time did these—I think in answer to the—first of all, Mr. Truesdale's question, you said that this package was sealed, is that right? Whatever these things were in?

A. Actually, I don't recall whether it was sealed, as such, or not. I do recall it was packaged, and more or less wadded up into a round ball.

Q. How large would you say the package was?

A. Approximately fit the palm of my hand.

\* \* \* \* \* \*

Q. And had you ever seen such objects before—before you answer, first of all, state upon what you base your statement, and what, if you know, the objects were in the package. As I say, you will have to tell us on what you base your answer.

DEFENSE COUNSEL: If your Honor please, I am going to object to all this line of questions, as to the materiality.

BY THE COURT: I believe it's immaterial.

ASSISTANT COUNTY ATTORNEY: Mr. Truesdale opened the door.

BY THE COURT: Yes he did, about red birds, but I * * *

DEFENSE COUNSEL: That was after you overruled my objection to it earlier, Judge. I don't think you can go on all night on this one subject. Again * * *.

BY THE COURT: Well now, wait a minute. I think the objection should be sustained. I think we have had sufficient on that."

At pages 76 and 77 of the casemade, the following appears:

"ASSISTANT COUNTY ATTORNEY: Officer, what, if anything, did you find in the trunk of the car?

A. I found a spare tire in the trunk and the usual articles that you would find there, with the exception of I found a package containing 97 redbirds, capsules."

It was Mr. Gresham's position that the injection of possession of red birds into evidence was a reference to a separate and distinct crime not related to the crime with which the defendant stood charged and was reversible error under the authority of Morrison v. State, Okl.Cr., 407 P.2d 998; Mitchell v. State, Okl.Cr., 395 P.2d 814; Carr v. State, Okl.Cr., 361 P.2d 701; Love v. State, Okl.Cr., 360 P.2d 954; and McMahan v. State, Okl.Cr., 354 P.2d 476.

It is the State's position that the testimony relating to red birds did not constitute any offense under the laws of the State of Oklahoma since the arresting officers did not testify that they were narcotic drugs or barbiturates.

The term "Redbird" in the common parlance of enforcement officers is generally understood to refer to Seconal, the possession of which, under the provisions of 63

O.S. § 469 is unlawful and punishable as a criminal offense except under certain circumstances which are not material.

Under the record before us we do not believe that the injection of this testimony into evidence was invited by counsel for defense, but to the contrary, it affirmatively appears that the first reference to the same came in response to a question by the Assistant County Attorney, a seasoned prosecutor, who undoubtedly was familiar with the connotation of the use of such expression among enforcement officials and well informed members of the general public.

We are of the opinion that under the authorities, supra, the testimonial reference to red birds constituted a separate and distinct offense from that for which the defendant was on trial and that its admission constituted reversible error. In Morrison v. State, supra, we said:

"1. The general rule is that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial is inadmissible."

We here take note that subsequent to the submission of this case on the brief and oral argument of counsel for defense, the defendant elected to discharge his attorney and filed a brief critical of said attorney. The pro se brief of defendant, a person with no legal training, did not assist the Court in rendering this opinion, nor was his criticism of counsel justified. Mr. Gresham capably represented the defendant before this Court and he is commended for the excellence of his brief.

Upon the record before us, and under the authorities above set forth, and for the reason stated herein, the judgment and sentence appealed from is Reversed and Remanded for a new trial. Reversed and remanded for a new trial.

NIX, P. J., and BRETT, J., concur.