*In the Matter of the Petition of* AUGUST SCHURMAN *et al.*
*for a writ of Habeas Corpus.*

1. CRIMINAL LAW — *Preliminary Hearing — Erroneous Commitment.* An order by a magistrate, committing persons charged with an offense for trial in a county other than where the offense is committed, is erroneous; but where they have been given a proper preliminary examination, the erroneous order holding them for trial in the wrong county will not invalidate such preliminary examination, nor prevent the filing of an information thereon in the proper county.

2. COUNTIES — *Organization — Judicial District.* The act constituting Hamilton county a part of the twenty-seventh judicial district operates to place Kearney county, which was unorganized and attached to Hamilton county for judicial purposes, within the same district; and under the provisions of that act, (chapter 147, Laws of 1887,) a term of district court was authorized to be held in Kearney county at such time as the district judge should appoint, after the same had been organized.

3. FALSE PRETENSES — *Information — Insufficiency.* A charge that certain persons caused one of their number to have his life insured for the benefit of his wife, and then falsely pretended that the insured was injured, that he died and was buried, that his body was stolen from the grave; that all was done for the purpose of obtaining the insurance-money from the insurer; and that they were frustrated in the attempt before the offense was consummated; without alleging to whom the false representations and pretenses were made; and without stating that the beneficiary in the policy was connected or coöperated with them in the attempt, or had any knowledge of their acts or purposes; and which does not state that the defendants intended to lead the beneficiary to believe that the insured was dead, or to procure her to present a claim for the insurance-money, or to obtain from her the policy or a transfer of the same, and which did not aver the means by which the money was intended to be obtained, does not constitute a punishable attempt to obtain money by false pretenses.

*Original Proceeding in Habeas Corpus.*

ON December 5, 1887, *August Schurman* and *William F. Ringle* were arrested upon a warrant issued by a justice of the peace of Kearney township, then an unorganized county, attached to Hamilton county for judicial purposes, and it was based on a complaint made by the county attorney of Hamil-

ton county, which set out the same charge as is contained in the information hereinafter quoted. On March 27, 1888, the petitioners were discharged, the state declining to further prosecute under that warrant, but they were immediately re-arrested upon a warrant charging a like offense issued by the judge of the twenty-seventh judicial district, before whom a preliminary examination was had on March 31, 1888, and they were then committed for trial at the next term of the district court of Kearney county. On October 18, 1888, the county attorney of Kearney county filed an information in the district court of that county, accusing the petitioners in the following terms:

"Now comes Frank P. Lindsay, county attorney of Kearney county, duly authorized to prosecute for offenses committed and attempted to be committed within said county, and gives the court to understand and to be informed that at the said county of Kearney, in the state of Kansas, on the —— day of July, 1887, the said county of Kearney being unorganized, and a portion of the twenty-seventh judicial district of the state of Kansas, the defendants, August Schurman, W. F. Ringle and Samuel Morehart, then and there being, did unlawfully, feloniously and designedly, with the intent to cheat and defraud the Provident Savings Life Assurance Company of New York, a corporation duly organized and doing business under and by virtue of the laws of the state of New York, enter into an unlawful and corrupt conspiracy with one Geo. T. Reddington; and that on the last day aforesaid, at the county aforesaid, the said Geo. T. Reddington, in pursuance of said unlawful and corrupt conspiracy, and with intent to cheat and defraud said corporation as aforesaid, took and had issued to himself a policy of life insurance on the life of him the said Geo. T. Reddington, which policy was issued by the said corporation, the Provident Savings Life Assurance Society of New York, agreed to and with the said Geo. T. Reddington to pay one Mrs. Nettie Reddington, the wife of said Geo. T. Reddington, the sum of five thousand dollars, payable at the death of him the said Geo. T. Reddington, which life insurance policy was then and there delivered to the said Geo. T. Reddington by one B. C. Purcell, the duly-authorized agent of said company. The said county attorney further gives the court to understand and be informed, that on the —— day of November, 1887, at the county aforesaid, and within the jurisdiction of this county, the defendants, August Schurman, W. F. Ringle

and Samuel Morehart, then and there unlawfully, designedly, falsely, feloniously and willfully combined and conspired and confederated together with the said Geo. T. Reddington, that he the said Geo. T. Reddington should pretend and represent himself to die, and by which unlawful and corrupt conspiracy the defendants should, with intent to cheat and defraud said corporation, designedly and falsely represent that he the said Geo. T. Reddington was dead, and that there was a funeral and a burial of the said Geo. T. Reddington, for the purpose of designedly and falsely cheating, defrauding and obtaining from the said corporation the said sum of $5,000 named in said policy of insurance as insurance on the life of him the said Geo. T. Reddington; that, in pursuance of said conspiracy, the defendants, together with the said Geo. T. Reddington, on the 22d day of November, 1887, at the county of Kearney aforesaid, did then and there unlawfully, designedly, falsely and feloniously pretend and represent that the said Geo. T. Reddington was injured while walking in said county, and on reaching the home of him the said Geo. T. Reddington, in said county on said evening, the defendants and said Reddington unlawfully, designedly and feloniously pretended and represented that he the said Geo. T. Reddington was seriously injured, and in pursuance of such unlawful conspiracy the said Reddington then and there went to his bed, and falsely, designedly, unlawfully and feloniously, with intent to cheat and defraud as aforesaid, pretended and represented himself to be seriously injured and dangerously ill, for the purpose of causing said corporation, and divers and sundry people residing in said county, to believe that he the said Geo. T. Reddington was seriously injured and dangerously ill, for the purpose of obtaining from said corporation the sum of $5,000 aforesaid; that on the —— day of November, 1887, at the county aforesaid, the defendants August Schurman, W. F. Ringle and Samuel Morehart, in pursuance of such unlawful and corrupt conspiracy, did then and there unlawfully, designedly, falsely and feloniously pretend and represent that the said Geo. T. Reddington was dead, and that he had died from the pretended injury and illness aforesaid; all of which was done for the purpose of causing said corporation to part with the said sum of $5,000, which said sum was payable on the event of the death of the said Geo. T. Reddington, under and by virtue of the policy aforesaid, the policy being then and there in full force and effect.

"And the said county attorney further shows to the court

that on the —— day of November, 1887, the said August Schurman, W. F. Ringle and Samuel Morehart did then and there, in pursuance of such unlawful and corrupt conspiracy, and with intent to cheat and defraud the said corporation, unlawfully, designedly, falsely and feloniously pretend and represent that the said Geo. T. Reddington was dead; and the defendants, on the day last aforesaid, caused to be procured a coffin for the burial of the said Reddington, whom they so falsely and fraudulently pretended was dead, and then and there unlawfully and feloniously and designedly, with the intent to cheat and defraud as aforesaid, pretended to have a funeral, and pretended to bury the said Reddington, with the intent to cheat and defraud the said corporation, by causing the said corporation to believe that the said Reddington was dead and buried, thereby intending unlawfully, feloniously and designedly to cause the said corporation to pay to the said Mrs. Nettie Reddington the said sum of $5,000, it being then and there willfully, corruptly and unlawfully and feloniously agreed by and between the defendants and the said Geo. T. Reddington, that the defendants should receive certain portions of said sum of $5,000, so to be paid to the said Mrs. Nettie Reddington; that on the —— day of November, 1887, the defendants, at the county of Kearney aforesaid, in pursuance of such unlawful and felonious conspiracy, and with the unlawful and felonious intent to cheat and defraud said corporation as aforesaid, designedly caused to be placed in said coffin, for the purpose of having it believed by the friends of the said Reddington and by the said corporation that the dead body of said Reddington was in said coffin; and on the —— day of November, 1887, at the county aforesaid, in pursuance of such unlawful and corrupt conspiracy as aforesaid, the defendants unlawfully, feloniously and designedly, with intent to cheat and defraud as aforesaid, learning that the supposed remains of said Reddington were to be placed in another coffin and shipped to the residence of his wife and mother in the state of New York, did then and there unlawfully, designedly, and feloniously, with intent to cheat and defraud said corporation, and to cause said corporation to continue in the belief that said Reddington was dead, and had died of said injuries, opened the said supposed grave of said Reddington, broke into said coffin for the purpose of taking out and removing, and did remove the weights which they had placed therein, with the unlawful and felonious purpose of causing the said corporation to believe that the supposed body of him

the said Geo. T. Reddington had been stolen from said grave; and the defendants then and there unlawfully, feloniously, willfully and designedly, and with the intent to cheat and defraud said corporation, intending that the said corporation should believe and rely upon each and all of said acts, false tokens, false pretenses and false representations, and believe them to be true, thereby unlawfully, feloniously and designedly intending to cheat and defraud said corporation out of said sum of $5,000 — all of which the defendants in the manner aforesaid, at the time aforesaid, and with the intent aforesaid, attempted to commit.

"And the said county attorney further shows to the court that the defendants, August Schurman, W. F. Rinkle and Samuel Morehart, failed in the perpetration of said offense, and were prevented or interrupted in executing the same, by the discovery of the unlawful and felonious acts of the defendants as aforesaid, and by their being arrested therefor, within one week after the supposed burial of the said Reddington. And the county attorney aforesaid now and here gives the court to understand and be informed, that notwithstanding the representations of the defendants aforesaid, the said Geo. T. Reddington was not injured as represented; was not ill as represented; that he did not die as was represented; that he was not buried as was represented; and that the defendants and each and every one of them well knew at the time that each and every one of their false, fraudulent, unlawful and felonious representations were false, and that they were made designedly with the intent to cheat and defraud the said corporation out of the sum of $5,000; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas."

Upon this information a warrant or commitment was issued, under which the petitioners were taken into custody, and are now held. To obtain a release from imprisonment, is the purpose of this proceeding in *habeas corpus*.

*Brown, Bierer & Cotteral*, for petitioners.

*S. B. Bradford*, attorney general, for The State; *Irwin Taylor*, of counsel.

The opinion of the court was delivered by

JOHNSTON, J.: The imprisonment from which the petitioners seek to be released is alleged to be illegal, on the

grounds that the judge of the district court, who acted as magistrate, had no authority to commit them for trial in the district court of Kearney county; that there was no authority to hold a term of court in Kearney county at the term when the information was filed and the warrant issued; and finally, that the information did not charge the petitioners with the commission of a public offense.

In respect to the first ground, it appears that when the preliminary examination was held before the district judge and the petitioners committed for trial in the district court of Kearney county, that county was then unorganized and attached for judicial purposes to Hamilton county. Until a permanent organization was effected, no district court existed, and no trial could be had in that county. For the time being, and for judicial purposes, it was a part of Hamilton county, and to the district court of that county the petitioners should have been committed for trial. The early organization of Kearney county was doubtless contemplated when the examination was had, and, as the parties were probably to be tried in the new county, when organized, the judge was erroneously led to commit them for trial there. This erroneous order, however, does not affect the legality of the present custody of the petitioners. They have had a proper and sufficient preliminary examination. It was conducted before the judge of the district court, a competent magistrate; a full investigation of the charge was made, and he found there was probable cause to believe they were guilty of the offense charged, and held them for trial. They have had such an examination as the statute requires preliminary to the filing of an information, and the fact that they were committed in the wrong jail, or for trial in the wrong county, does not invalidate the examination, nor prevent the filing of an information in the proper county. An application for a release from imprisonment under that order could only have resulted in a transfer of the petitioners to Hamilton county for custody and trial. The information was properly filed in Kearney county when organized; the offense

1. Criminal law
—preliminary
hearing—
erroneous
commitment.

was committed within the bounds of Kearney county while it was a part of Hamilton county; and as Kearney was organized before an information or indictment was filed, the offenders must be tried in the new county. (*The State v. Bunker*, 38 Kas. 737.) We must assume, for want of proof to the contrary, that Kearney county was organized soon after the commitment of the petitioners, and before the information was filed against them in the district court of that county; and if they had been committed for trial in Hamilton county, as they should have been, the prosecution must necessarily have occurred in Kearney county, when its organization was completed, and it was provided with a district court.

The objection that Kearney county is not within the twenty-seventh judicial district is not good. There is no statute, it is true, declaring in terms that Kearney county constitutes a portion of that district; but there is one making Hamilton county a part of the district. Kearney was a township of

2. Counties—or- Hamilton, and in the absence of any special pro-
ganization— vision to the contrary it must be held to be in-
judicial dis-
trict.          cluded in the district, the same as the other
portions of Hamilton county. Then, by § 8 of chapter 147 of the Laws of 1887, it was enacted that terms of court should be held in the unorganized counties of the district, at such times as the judge thereof shall appoint, after the same shall have been organized. These provisions furnished authority for the holding of a term of court when the county was organized; and since it is shown that a term was held, we must presume that the county was organized, and that the conditions under which a term of court could be rightfully held existed.

The third ground of illegality relates to the sufficiency of the information, and we have concluded that it is fatally defective. The information was filed under § 283 of the crimes act, which provides for the punishment of those who attempt the commission of public offenses. It was intended to charge the petitioners with attempting to commit the offense of obtaining money from the Provident Savings Life Assurance Com-

pany of New York, by false pretenses. The pretenses and means by which the attempt was made are set out; but in our opinion they do not constitute an indictable attempt. It is alleged in substance that the defendants caused the issuance of a policy on the life of Geo. T. Reddington, one of their number, by which the insurance company agreed to pay to Mrs. Nettie Reddington, the wife of Geo. T. Reddington, the sum of $5,000 at his death; that they agreed among themselves that Geo. T. Reddington should pretend to be hurt, and subsequently to die; and that in pursuance of this conspiracy they pretended that Geo. T. Reddington was seriously injured while walking home on the evening of November 22, 1887, and that the injury resulted in his death; and further, that they purchased a coffin and pretended to have a funeral and to bury the body of Reddington; and that subsequently they opened the grave and the coffin and took therefrom weights which had been placed therein; and that all these things were done with the intention to cheat and defraud the insurance company by obtaining therefrom the insurance-money; as it is alleged that Reddington was not injured, did not die, and was not buried, as represented. Nowhere is it alleged that Nettie Reddington, the beneficiary of the policy, was implicated in any way in the conspiracy, or had any knowledge of the steps taken by the defendants, or that she even believed her husband to be dead. It is not charged that the policy had been assigned, or that the beneficiary therein had been changed, nor yet that the defendants had control of the policy and intended to forge an assignment or transfer of the same. The pretenses are not alleged to have been brought to the attention of the beneficiary, and there is no statement that it was intended to induce her to apply for the insurance-money, either fraudulently or in good faith. It is not even stated that the false representations were made to the company, or to any of its agents. The company could not be defrauded unless the beneficiary, or some one for her, represented to it that he was dead, and applied for the insurance. None of the defendants had any interest in the policy, or any right to de-

mand payment of the same, even if the insured had been actually dead. The means stated to have been employed for the purpose of obtaining the money were of themselves futile and vain to accomplish the intended end. They were not adequate nor suitable for the purpose, nor were they such as would apparently produce the desired result. The offense intended to be charged is defined "to be a deliberate crime which is begun, but, through circumstances independent of the will of the actor, left unfinished. More strictly, it is such an intentional preparatory act as will apparently result, if not extrinsically hindered, in a crime which it was designed to effect." (1 Wharton's Crim. Law, § 173.) With reference to attempt, it has also been said that, "If all which the accused person intended, would, had it been done, constitute no substantive crime, it cannot be a crime under the name 'attempt,' to do with the same purpose a part of this thing. One reason is, that the specific attempt, which we have seen is always necessary in a criminal attempt, is wanting. Another reason relates to the act; namely, if a series of acts together will not constitute an offense, one of the series alone will not." (1 Bishop's Crim. Law, § 747.) To charge the offense of obtaining money by false pretenses, the material facts necessary to be established must be set out. As every promise or pretense is not criminal, those relied upon must be plainly alleged, to enable the court to determine their indictable quality. The pretenses must be specifically negatived, and it must be stated that they were made to some person to be injuriously affected by them, and that upon the faith of such pretenses the money was obtained. The approved method of charging an attempt to commit the offense is to follow the form as for an accomplished fraud, charging the facts as fully and definitely as in the substantive crime, except in the ending, where, instead of alleging that the money was unlawfully obtained, to state that the defendants did then and thereby unlawfully attempt to obtain it. (2 Bishop's Crim. Pro., §§ 194, 195.) And where the acts charged to have been done and intended to be done would not, if consummated, constitute the substantive

offense, the attempt will not of itself amount to a punishable crime. There is a general allegation in the information, that the petitioners intended to cheat the insurance company out of the $5,000 promised in the policy; but this is not enough. The means by which it was intended to accomplish the purpose must be set forth. Some courts have held that to constitute a criminal attempt, the means used and intended must be suitable and adequate to effectuate the purpose; but the prevailing doctrine is that they must be such that in the ordinary course of things they would, if not interrupted, have apparently resulted in a crime; and the overt acts committed, together with the steps intended to accomplish the fraud, should be averred. Dr. Wharton, in speaking of an information for this offense, says the facts must be so fully set forth as to show that the attempt is criminal in itself; and an information charging simply that the defendant obtained goods by false pretenses "would be scouted out of court." (1 Wharton's Crim. Law, § 192.) When the facts are so alleged, the means must at least be apparently sufficient to have accomplished the fraud if the attempt had not been frustrated. Here Mrs. Reddington, the beneficiary, stood between the attempt and the execution. All of the steps taken and specifically alleged to have been intended, would not have operated to defraud the company. If Reddington was injured, had died, and had been buried, as was pretended, then, so far as the information shows, there was still no apparent ability on the part of the defendants to commit the fraud. Mrs. Reddington, as has been stated, is not charged with coöperating in any way with the intended fraud. There is no statement that it was their intention to use her or the policy which she held to effect their purpose. Being the beneficiary, with the control of the policy, she effectually blocked the defendants from perpetrating a fraud on the company. If what was charged would naturally have resulted in inducing the company to part with its money, such attempt would probably be an offense; "but when between the attempt and the execution is interposed the volition of an independent moral agent,

then, by stress of the definition just given, an indictable attempt is not made out." ( 1 Wharton's Crim. Law, §§ 177, 178.)

We think the information as it now stands does not charge a public offense, and the commitment of the defendants thereunder is illegal. (*The State v. Brannan*, 3 Nev. 238; *The State v. Wilson*, 30 Conn. 500; *Randolph v. Commonwealth*, 6 S. & R. 397; *Commonwealth v. Clark*, 6 Gratt. 675; *Mears v. Commonwealth*, 2 Grant's Cas. 385; *Beasley v. The State*, 18 Ala. 535; *Anthony v. The State*, 29 id. 27; *Ladd v. The State*, 17 Fla. 215; *United States v. Stephens*, 12 Fed. Rep. 52; *Rex v. Powles*, 4 C. & P. 571; *Rex v. Marsh*, 1 Den. C. C. 505.)

3. False pretenses —information —insufficiency.

As the state may desire to file another or amended information, stating facts which would constitute a punishable attempt, time will be given for that purpose. The petitioners will be remanded to custody for ten days, when they will be discharged unless such an information is filed, and they are taken and held upon a commitment issued thereunder.

All the Justices concurring.