## LUTHER J. NEMECEK v. STATE.

No. A-9795.  June 11, 1941.
(114 P. 2d 492.)

Sam S. Gill, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J.  The defendant, Luther J. Nemecek, was on October 1, 1938, charged in the district court of Oklahoma county with the offense of attempting to obtain money under false pretenses, was tried, convicted and sentenced to serve a term of one year in the state penitentiary, from which judgment and sentence he appeals to this court.

On appeal the defendant makes 27 assignments of error; however, this court finds that it is necessary to consider only one contention of defendant, to wit:

The court erred in overruling defendant's demurrer to the state's testimony and in refusing to direct the jury to return a verdict of not guilty.

The charging part of the information is as follows:

"On the 7th day of August, A. D., 1938, in Oklahoma County, State of Oklahoma Luther J. Nemecek whose more full and correct name is to your informant unknown, then and there being, did then and there willfully, unlawfully and feloniously commit the crime of attempting to obtain money under false pretenses in the manner and

form as follows to wit: That is to say, the said defendant in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there willfully, unlawfully, designedly and feloniously attempt to obtain from St. Paul Fire & Marine Insurance Company, a corporation authorized to do business in Oklahoma, $600.00 good and lawful money of the United States of America, by means and use of false and fraudulent representations, that is to say, the said defendant represented and stated to the said St. Paul Fire & Marine Insurance Company that on August 7, 1938, a certain residence located at 236 Southeast 54th street in Oklahoma County, Oklahoma, was destroyed by fire without the fault or procurement of the said defendant; defendant did then and there represent that as a result of said fire as above described, there was then and there destroyed the following property to wit: One small type Hartford upright piano of the value of $92.50; one Kenmore carpet sweeper of the value of $46.45; and one 9 x 15 Axminister rug of the value of $75.50, all the personal property of the said defendant, then and there insured with the St. Paul Fire & Marine Insurance Company, all of which statements by said defendant, as above set out, were made by said defendant with the intent to obtain $600.00 good and lawful money of the United States of America from the St. Paul Fire & Marine Insurance Company, and the said defendant was prevented from obtaining the $600.00 by reason of the said refusal of the said company to pay said $600.00 to said defendant, upon the discovery that said defendant did not then and there possess the above described property at the said address, and the fact that said articles were not destroyed by fire, all of which statements were false and untrue, all of which the said defendant well knew, and the said defendant knowingly made each and all of said false and fraudulent representations with the unlawful, willful, designed, fraudulent and felonious intent to cheat and defraud the said St. Paul Fire & Marine Insurance Company of said $600.00 as aforesaid, contrary to the form of the statutes in such case made and provided against the peace and dignity of the State of Oklahoma."

This action was brought under section 2086, O. S. 1931, 21 Okla. St. Ann. § 1541, which in part states:

"Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any * * * corporation, any money, property, or valuable thing, of the value of [more than] Twenty ($20.00) Dollars * * * by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instrument * * * shall be deemed guilty of a felony and shall be punished by imprisonment in the State Penitentiary, for a term not exceeding seven (7) years, or by a fine not to exceed Five Hundred ($500.00) Dollars, or by both such fine and imprisonment."

The proof of the state showed that defendant took out a fire insurance policy with the St. Paul Fire & Marine Insurance Company on his household furniture in the sum of $600 on June 25, 1938. That his home was destroyed by fire on August 7, 1938; and he reported the loss by telephone. L. H. Wahl, an adjuster for the company, checked the scene of the fire and asked defendant if he had made up a list of his loss. Defendant said that he had not, but on the next day submitted to Mr. Wahl at his office a claim listing the articles purported to have been lost in the fire. Defendant stated that the list had been made up with the help of his wife. On this list were the articles claimed to have been burned, their value, and their date of purchase. Among the many items listed was a piano valued at $92.50, a carpet sweeper valued at $46.45, and a 9 x 12 rug valued at $75.50. Wahl again examined the ruins of defendant's home and failed to find anything that appeared to be the remains of a piano. About ten days after the fire, defendant called Mr. Wahl to inquire about his policy and was told that the loss was still being investigated. Some two or three weeks later defendant called again and stated that he was not going to wait much longer; he wanted some action.

Mr. Wahl testified that he did not give the defendant a proof of loss to fill out. That where a claim is submitted, and upon investigation is found to be correct, an agreement is made as to the amount of the loss; that amount is put in a proof of loss, and the list first submitted is used as a supporting paper for the proof of loss. The proof of loss is sworn to by the claimant and acknowledged. No money is paid to the claimant until the proof of loss is sworn to and acknowledged.

The proof of the state further showed that defendant made a sworn statement in the State Fire Marshal's office that the loss he sustained included a small Hartford piano, which cost either $75 or $95, and he believed he bought it from the O. K. Furniture Co.

In a statement made in the county attorney's office, defendant at first maintained that the piano was burned, then admitted that it was not in the house at the time of the fire. He also admitted that the sweeper was not in the house.

There is no contention by the state that any proof of loss was filled out or that the defendant had received any of the insurance money.

At the close of the state's case, defendant's attorney demurred to the evidence for the reason that it was insufficient to establish the crime attempted to be charged, and moved the court to direct the jury to return a verdict of not guilty, which was overruled by the court.

Section 2243, O. S. 1931, 21 Okla. St. Ann. § 1662, which states: "Every person who presents * * * any false or fraudulent claim * * * upon any contract of insurance, for the payment of any loss * * * is punishable by imprisonment in the penitentiary not exceeding three years, or by a fine not exceeding one thousand dollars, or both,"

was enacted to cover such a situation as is herein set out. This action properly should have been brought under this section; however, the county attorney elected to attempt to make a case under sec. 2086, supra, which carries a maximum penalty of seven years imprisonment.

Section 10557, O. S. 1931, 36 Okla. St. Ann. § 244, states that the standard form of fire insurance policy shall contain the following language:

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, * * * make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and within sixty days after the fire * * * shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured, and of all others in the property; the cash value of each item thereof and the amount of loss thereon * * *."

The defendant in this case gave immediate notice by telephone; the company sent an adjuster to examine the ruins; defendant filed an inventory which stated the quantity and cost of each article. Further proceedings were stopped by the insurance company. The state proved that defendant had included at least two items in the inventory submitted, which he knew had not been destroyed by the fire.

In Ex parte Turner, 3 Okla. Cr. 168, 104 P. 1071, 1073, an attempt to commit a crime is defined as being the compound of two elements: (1) The intent to commit it; and (2) a direct ineffectual act done towards its commission. It is further stated that an attempt is an intended, apparent, unfinished crime. This court went on to say:

"Therefore the acts must reach far enough towards the accomplishment of the desired result to amount to

the commencement of the consummation. It must be not merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made."

The overt act must be something more than mere preparation or planning the crime. It must be something done, some step taken beyond preparation, that directly moves toward the crime and brings the accused nearer to its commission than mere acts of preparation or of planning. It must be such act or acts as will apparently result, in the usual and natural course of events, if not hindered by extraneous causes, in the commission of the crime itself. State v. Thomason, 23 Okla. Cr. 104, 212 P. 1026; Becker v. State, 45 Okla. Cr. 350, 283 P. 796.

In Rhodes v. State, 58 Okla. Cr. 1, 49 P. 2d 226, 231, this court held:

"To constitute the crime of obtaining property under false pretenses the essential elements are: A false statement of past or existing facts by one person to another with intent to defraud; such statement must be reasonably calculated to deceive that other. It must be so designed as to induce such other to part with his property, and such design must be accomplished, by means of the false pretenses made use of for that purpose."

It is stated in Smith v. State, 7 Okla. Cr. 136, 122 P. 732:

"While it is not necessary that the false pretenses should be the sole inducement which moved the prosecuting witness to part with his money, it is necessary to show that they materially contributed to that end, and that without such false pretenses he would not have parted with his money."

This court said in Taylor v. Territory, 2 Okla. Cr. 1, 99 P. 628, 629:

"To constitute the crime [of obtaining money under false pretenses] under our statute, three things are essential: First, a false representation as to an existing fact; second, a reliance on that representation as true; and, third, it must be the moving cause which induced the owner to part with his property. * * *

"In order to justify a conviction upon the trial of an indictment for false pretenses, it must appear that the prosecutor parted with his money by reason of some of the pretenses set forth in the indictment, or, if not solely by reason of such pretenses, that they at least materially influenced his action."

Before an accused has attempted to obtain money by false pretenses, he must have made a false statement reasonably calculated to deceive another, which statement is so designed as to induce the other to part with his property in reliance upon the false statement, and if not hindered by extraneous circumstances accused would have obtained said money from such other person, if not solely by reason of the false pretenses, at least because they would have been the moving cause or a material influence through which he would have received the money.

The state showed that defendant made at least two false statements in the inventory which he submitted, which were calculated to deceive the insurance company. The proof further showed that the fire destroyed all of the household furnishings of the defendant, which were valued far in excess of $600. The inventory filed by the defendant listed their value as $1,591.47. The false items were only a very small part of the total loss. The state has wholly failed to show that these false items were so designed as to cause the insurance company to pay to defendant the $600 on his policy on account of them, or

that if the company had relied upon them instead of finding them false, that these particular items would have been the moving cause or material influence by which defendant would have collected the money due on the fire insurance policy for the loss of all of his household furniture. It is conceded by the state in their argument, and the proof shows, that regardless of the false items which were included in the inventory filed by the defendant, he had sustained an actual loss in such an amount that he was entitled to recover the $600.

In 22 C. J. S., Criminal Law, § 74, p. 138, it is stated:

"Neither can one be convicted of an attempt to commit a crime unless he could have been convicted if his attempt had been successful; thus, where the act, if accomplished, would not constitute the crime intended, as a matter of law, then there is no indictable attempt."

In re Schurman, 40 Kan. 533, 20 P. 277, 282, held:

"With reference to attempt, it has also been said that 'if all which the accused person intended would, had it been done, constitute no substantive crime, it cannot be a crime, under the name "attempt," to do, with the same purpose, a part of this thing.'"

So, an accused cannot be found guilty of an attempt to commit an act which would not have been a crime if it had been accomplished. It is necessary to have more than a specific intent to commit a crime. There must be an overt act that would, if uninterrupted, amount to the first step toward the accomplishment of the crime. The statute under which the charge in this case is brought does not make the intent to obtain money by false pretenses a crime; nor does it make a futile and dishonest gesture, coupled with such intent, a crime. There must be an overt act, coupled with the intent, that will at least start the consummation of a crime.

The defendant cannot be held on this charge of attempting to obtain money by false pretenses, even though there is evidence showing his dishonesty; and whether or not he acted overtly with criminal intent, the state has wholly failed to show that had defendant collected money on his fire insurance policy he would have been guilty of obtaining money under false pretenses, and thus have been guilty of a crime.

At the close of the state's case, the jury should have been instructed to acquit defendant.

In view of the fact that the county attorney may elect to commence a prosecution under section 2243, supra, we feel that it is proper to discuss one other assignment of error made by the defendant in order to prevent a repetition of certain proof introduced by the state, which in case of a conviction might require a reversal on appeal.

Evidence was admitted over objection of defendant to show that in 1937 he had a fire in his home which destroyed certain clothing and furniture to an extent that he collected $300 insurance; that in April, 1938, a 19 months old child of defendant's was burned to death and defendant collected $200 insurance; that defendant's automobile had burned many years before, which was insured; that the defendant was a bigamist and had been involved in other sordid marital affairs.

The court instructed the jury that evidence of other fires and claims by the defendant against insurance companies was to be considered only in the nature of circumstances tending to show a plan or scheme on the part of defendant to instigate or procure fires or collect or attempt to collect insurance, to which instruction the defendant excepted. It is not clear in the record as to why the evidence concerning the marital affairs of the defendant was admitted.

It should be borne in mind that the defendant is charged with the crime of attempting to obtain money by false pretenses. If he had been charged under section 2242, O. S. 1931, 21 Okla. St. Ann. § 1661, which states: "Any person who willfully burns * * * any property whatever, which is, at the time, insured against loss or damage by fire, * * * with intent to defraud or prejudice the insurer, * * * is punishable by imprisonment in the penitentiary not less than One (1) year, nor more than Five (5) years," instead of the false pretenses statute, there would have been some basis for the admission of the testimony as to the other fires and the collection of other insurance for the purpose of showing the criminal intent. Here there is no contention by the state that the defendant had willfully burned his property. The prosecution is based on the theory that he had sustained a loss, but had filed a false claim.

In the first place, the state has wholly failed to prove any other offenses. The proof in connection with the other fire losses was not sufficient in any instance to make a prima facie case of a violation of any law. They were merely circumstances which evidently did not look suspicious at the time, but which looked suspicious after it became evident that the defendant had falsely reported certain items which be claimed were burned. The facts surrounding the death of defendant's child were not even suspicious. It is doubtful if there is a single person who heard the evidence who believed that the defendant had willfully murdered his child in order to secure $200 insurance, which was barely enough to pay burial expenses.

It is our opinion under the record that all of these alleged circumstances are distinct, unrelated, have no connection with this case, and are fatally prejudicial, requiring the defendant to defend on alleged separate and dis-

tinct crimes from the one charged. As has been repeatedly said, if the defendant is to be proven guilty, he must be proven guilty by facts concerning the particular offense charged.

The general rule is that, when a defendant is put upon trial for one offense, he should be convicted, if at all, by evidence which shows that he is guilty of that offense alone; and evidence which in any manner shows, or tends to show, that he has committed another crime, wholly independent, even though it be a crime of the same sort, is irrelevant and inadmissible. Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L.R.A. 1917D, 383.

As an exception to this general rule, evidence of other offenses recently committed, similar to that charged, is admissible when it tends to establish a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or when it shows or tends to show guilty knowledge or intent in the commission of the offense charged. State v. Rule, 11 Okla. Cr. 237, 144 P. 807; Boyer v. State, 68 Okla. Cr. 220, 97 P. 2d 779.

In any prosecution, when the state offers to prove other alleged offenses for the purpose of showing a common scheme, plan or intent, the proof must clearly come within the exception to the general rule; and where they are distinct and unrelated offenses, or remote as to time, an objection by the defendant to this proof should be sustained. Perdue v. State, 40 Okla. Cr. 9, 266 P. 514; Ricker v. State, 39 Okla. Cr. 58, 263 P. 160; Stanfield v. State, 30 Okla. Cr. 82, 235 P. 256.

For the reasons hereinabove stated, the judgment of the district court of Oklahoma county is reversed and remanded with instructions to dismiss.

BAREFOOT, P. J., concurs. DOYLE, J., absent.