BILL LIZAR v. STATE.

No. A-9994.    May 20, 1942.

(126 P. 2d 552.)

370

Brown Moore and Guy Horton, both of Stillwater, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Horace D. Ballaine, Co. Atty., of Pawnee, for defendant in error.

JONES, J. Bill Lizar was charged in the district court of Pawnee county with the crime of receiving stolen property, was tried, convicted and sentenced to serve five years in the State Penitentiary, and has appealed.

Counsel for defendant have presented 19 assignments of error. Under the view which we take of this case, it is only necessary in the disposition thereof to discuss two of the questions that are presented.

It is contended that the trial court erred in admitting evidence of other crimes in which the defendant was alleged to have been involved. The defendant was charged with receiving one roan cow from Louis Brown and Sam Marrs on May 3, 1940. Both Brown and Marrs confessed to stealing the roan cow, together with a Durham cow from one Detweiler. They also testified that two or three days after stealing the Detweiler cattle they stole five other cattle near Stillwater and placed them in the defendant's pasture where they had left the Detweiler cattle. The witness Louis Brown testified that he had lived in

the home with the defendant Lizar since he was 14 or 15 years of age. The county attorney, over the objection and exception of defendant, asked the following questions:

"Q. Did he (referring to defendant) teach you to steal? Did you and Bill go out together and steal cattle at various times before this? A. We have stole calves together, and we have stole cows and butchered them. Q. How many times? A. I don't know exactly how many times we have done that. Q. Well, approximately how many? A. Around 20 or 25 times. Q. Did you ever steal any harness together? A. Yes. Q. How many sets? A. I would say three or four sets."

Later, after other witnesses for the state had testified, the witness Louis Brown was recalled by the county attorney, at which time the following occurred:

"Q. You are the same Louis Brown who testified yesterday? A. Yes, sir. Q. You testified yesterday that you had gone to live with Bill, and that you and Bill had stolen some cattle previously? A. Yes, sir. Mr. Moore: We object to this as improper re-direct examination, and leading and suggestive, not within the issues, and done for the purpose of prejudicing the rights of this defendant. Mr. Ballaine: That is just laying a foundation. The Court: Overruled. Mr. Moore: Exception. Q. How old were you when you stole the first cattle with Bill? Mr. Moore: Objected to as incompetent, irrelevant and immaterial, not within the issues in this lawsuit, and move the court to instruct the jury not to consider it. The Court: Overruled. Mr. Moore: Exception. Q. How old were you? A. I would say I was somewhere around 15, or just a little after that."

Some contention is made by the county attorney that since counsel for defendant attempted to show by his cross-examination of Louis Brown that Brown had lived in the home of the defendant for 12 years, in which he had been treated as a member of the family, he, the county attorney, should be allowed on redirect examination to show

that Bill Lizar did not teach him as a father should a son, but that he had taught him to steal and commit other crimes.

It is a fundamental principle of criminal law that the character of the defendant cannot be impeached or attacked by the state, unless he puts his character in issue by introducing evidence of good character. Porter v. State, 8 Okla. Cr. 64, 126 P. 699; Whitlow v. State, 24 Okla. Cr. 307, 218 P. 162; Holleman v. State, 74 Okla. Cr. 258, 125 P. 2d 239.

There could be nothing more dangerous than to place a man upon trial for the violation of some specific statute and then allow the prosecution, upon some slight pretext, to allow a witness to make the general statement that for the past 12 years he and the defendant had stolen cattle 20 or 25 times, and had stolen other things together. Regardless of the guilt or innocence of the accused of the offense with which he stands charged, no man would be acquitted in the face of such testimony as this, if believed by a jury, as the average juror would conclude that if a man had stolen that many times he should be punished even though he might be innocent of the offense for which he is being tried.

Neither would the above statements be admissible in evidence to show unlawful intent or a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other.

The general rule is that when a defendant is put upon trial for one offense, he should be convicted, if at all, by evidence which shows that he is guilty of that offense alone; and evidence which in any manner shows, or tends to show, that he has committed another crime, wholly independent, even though it be a crime of the

same sort, is irrelevant and inadmissible. Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L.R.A. 1917D, 383; Nemecek v. State, 72 Okla. Cr. 195, 114 P. 2d 492, 498, 135 A.L.R. 1149.

As an exception to this general rule, evidence of other offenses recently committed, similar to that charged, is admissible when it tends to establish a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or when it shows guilty knowledge or intent in the commission of the offense charged, or where the other offenses are a part of the res gestae.

In Nemecek v. State, supra, it is stated:

"In any prosecution, when the state offers to prove other alleged offenses for the purpose of showing a common scheme, plan or intent, the proof must clearly come within the exception to the general rule; and where they are distinct and unrelated offenses, or remote as to time, an objection by the defendant to this proof should be sustained. Perdue v. State, 40 Okla. Cr. 9, 266 P. 514; Ricker v. State, 39 Okla. Cr. 58, 263 P. 160; Stanfield v. State, 30 Okla. Cr. 82, 235 P. 256."

There is no contention that the offense alleged to have been committed by the defendant was a part of a common scheme or plan, for the prosecuting witness, Louis Brown, testified that when he left the defendant's place about May 1st he told defendant he was going to Oklahoma City to get a job. The cattle were stolen that night according to the testimony of Brown and placed in Lizar's pasture without the knowledge of Lizar. Brown and Marrs then took two of Brown's cattle to Tulsa, sold them, took the money and came back to Oklahoma City. While in Oklahoma City, Brown wrote a letter to Lizar stating that he was fixing to go to the Salt Plains to go to work and it was not until after he had stolen five

other cattle two nights later near Stillwater that he had
a talk with Lizar in which he told him about stealing the
cattle. The next morning after the cattle had been stolen
at Stillwater, the confessed thief, Brown, testified that
he saw Lizar for the first time since any of the cattle
were stolen. His testimony as to what occurred there is
as follows:

"Q. (By Mr. Ballaine, county attorney) All right,
go ahead, tell us what you said to Bill, and what Bill
said to you, and so forth. A. Well, I drove up in the
yard and stopped my truck, and Bill come out to the truck
and met me, and he said, 'Well, did Lucy tell you to
come over?' I said yes. Q. Who is Lucy? A. That is
my wife. And he said, 'I left word over there to tell you
to come over, because I have been sold out.' And he asked
me about those two cattle. Q. And what did he say when
he asked you about them? A. He said, 'Woody heard you
boys' truck up there'—Woody Green, that is the colored
boy—and he said 'That roan cow you got was out.' And
he said that— Q. Did you tell him at that time whether
or not these cattle were stolen property? A. Well, I told
him, yes, I stole two cattle. He asked me if I hadn't
stolen them, and he said that roan cow was out, and I said
yes. Q. Did you tell him these two were the ones? A.
Yes, the first two that I got, and he—let's see, he told
me, he said, 'Louis, I want you to tell me where you got
these cattle.' And then he said, 'Wait a minute, I am go-
ing to tell you where you got them, and if I am right,
you tell me, and if I ain't, you tell me where you got
them.' And he told me where he thought I got them.
Q. Where did he say he thought you got them? A. About
five miles west of Pawnee, out at Brown's, on the north
side of the highway. Q. He was wrong about that? A.
Yes, he was wrong about that. And I told him where I
got them, over there about two miles this side of Perry.
Q. All right. Go ahead and tell us what else was said.
A. So I says, 'Well, that ain't all of it.' I says, 'I stole
five more last night.' And he said, 'My God, have you
lost your mind?' I said, 'No.' He said, 'Where did you

get them at?' And I told him. * * * Q. After you told him you had stolen five more, then tell us what he said then. A. All right. He said, 'Now, Louis,' he says, 'You just as well tell me—' He says, 'Louis, what part of this is Sam getting out of that?' He said, 'You needn't make light of me,' he said, 'You just as well tell me, because I know you didn't get all them cattle yourself.' So I told him then, I says, 'Well, Bill,' I said, 'Sam agreed to pay all the expenses of the truck, and pay for half the license, and I would furnish the truck, and we would take half on it, and for your helping us get around with this stuff here, if you help us we will get you a cow or two for it.' Q. What did he say about that? A. He said, 'Well Louis,' he said, 'All I care about is that you get out of this and don't get caught.' And he said, 'I am going to try to help you get out, and then I want you to stop it.' He said, 'I don't care if I get any cows or not, if you want to give me any for that, that would be all right.' "

All of the state's case is built around the testimony of Louis Brown. With the exception of the testimony that the five cattle stolen at Stillwater were brought to Lizar's pasture where the first two were placed, there is nothing in the rest of the statements by Brown concerning the many alleged prior thefts to show a common scheme or plan and they are too remote to be admissible to show unlawful intent.

In the recent case of Cox v. State, 74 Okla. Cr. 186, 124 P. 2d 432, it is stated:

"In a prosecution for receiving stolen property, the possession by defendant of other recently stolen property is a circumstance that may be considered in determining the intent."

The testimony regarding the five cattle stolen at Stillwater we think is properly admissible as evidence because it is so interrelated with the alleged transaction had between Louis Brown and the defendant as to be a part of the res gestae, and was a part of the common scheme

or plan which, under the state's theory, defendant had with Brown to aid him in the disposition of the stolen property. The testimony of Louis Brown in which he made the general statement that Lizar had taught him to steal and that they had stolen together 20 or 25 times, together with other testimony along the same line, was too remote and wholly disconnected with the o f f e n s e charged. We can find no theory of law by which such testimony is admissible. If this testimony was inadmissible it cannot be argued that the same is harmless error as its prejudicial effect can hardly be overexaggerated. It is easy to perceive that the doctrine of harmless error would be intolerable if absolute fairness is not accorded defendants upon trial. We have no sympathy with the idea that because the county attorney is convinced that a defendant is guilty, it makes no difference how his conviction is obtained.

This case involves the identity of a roan cow sold by the defendant to Henry Dallas. It was the contention of the prosecution that this roan cow was stolen by Brown from Detweiler. Detweiler identified the cow as the one which was stolen from him. On the other hand, the defendant put on proof by four witnesses tracing his ownership of the cow in which it developed that he had received the cow from one Ed Johnson as part payment on the building of a government lake. If the jury believed the testimony of defendant's witnesses, then they would have necessarily acquitted the defendant. On the other hand, if they believed the testimony of the state's witnesses that the cow defendant had traded to Henry Dallas was the Detweiler cow, then, likewise, it would have been their duty to return a verdict of guilty. It was not a case where the possession by defendant of stolen property is admitted by defendant and a claim of good faith is inter-

posed by him. In this case defendant denies he ever had possession of the stolen property. He absolutely denies that he ever received any stolen property from Brown and the question resolves itself into a matter of the identity of the roan cow traded to Henry Dallas. There can be no doubt that the possession of property recently stolen is admissible against an accused to show the unlawful intent; especially would this be true where the possession of the stolen property is admitted by the defendant but his knowledge of the fact that it had been stolen is denied.

But the exception to the rule should not be enlarged so as to permit evidence that defendant and Brown, in years past, had stolen cattle 20 or 25 times together. The reason and justice of this ruling is apparent, and its observance is necessary to prevent injustice in criminal prosecutions. Bishop says that "to permit such evidence would be to put a man's whole life in issue on a charge of a single wrongful act, and crush him by irrelevant matter, which he could not be prepared to meet." 1 Bish. Crim. Proc. par. 1124.

It is next contended that the court erred in admitting in evidence a letter purportedly written by Louis Brown, while he was confined in the county jail at Perry, which letter was addressed to the defendant. The record reveals the following:

"Q. (By Mr. Ballaine, county attorney) Did you or did you not try to protect Bill when you first were put in jail over at Perry? A. Yes, sir. Mr. Moore: Objected to as leading the witness, improper redirect examination. Mr. Ballaine: Here is the point, your Honor; he said that he was angry at Bill and tried to frame him. I want to try to show that he tried to protect Bill over at Perry, as well as he could. The Court: Overruled. Mr. Moore: Exception. Q. Did you try to? A. Yes, sir. Q. Now, I hand you this exhibit, State's Exhibit 2, and ask you whether or not you sent this letter to him in further-

ance of that scheme? A. Yes, sir. Mr. Ballaine: We offer it in evidence. Mr. Moore: Objected to as incompetent, irrelevant and immaterial, self-serving, hearsay, not within the issues. The Court: Overruled. It will be admitted for one purpose and one purpose only, to show whether or not there was this feeling existing between them."

The letter thus admitted in evidence is as follows:

"Bill I don't know how else to make an alibi for you. I have not let out a thing yet. I think Sam has said something about the brindle cow. I will hold out till the last. Try and trade Ed. J. out of that Roan 3 yr. old heifer for the one I traded for the bull. Fix up with Henry Dick that I sold the little Jersey heifer instead of you. They are not going to quit till I tell where they are. I don't know what you have figured out.

"Louis Brown."

This letter was allegedly found by the officers of Noble county on an inmate of the jail who was leaving the jail, and was never delivered to the defendant Lizar, and, so far as the record shows, was never heard of by him until produced by the county attorney at the trial in the manner above set forth. As shown by the above record, it was admitted by the court solely for the purpose of showing whether there was ill-feeling between Brown and Lizar.

We think the expression used in the case of People v. Colburn, 105 Cal. 648, 38 P. 1105, is applicable to this case. The syllabus of that case is as follows:

"A letter found on the person of defendant when arrested for robbery, containing damaging statements and warnings to keep out of reach of the officers, and identified by a witness as having been written by him to defendant, is inadmissible in the absence of evidence that defendant answered it or acted on the information contained therein."

In the body of the opinion it is stated:

"That the letter contained damaging evidence against the defendant is quite apparent. It does not in direct terms state his guilt, but the fact that the writer regarded defendant and A. (Alic Knox) as being guilty is plainly inferable from his solicitude and caution to them to avoid discovery of their whereabouts. All this was well calculated to impress a jury with the belief that defendant was guilty. This letter was clearly hearsay. Were such evidence admissible against a defendant charged with crime, there would be no limit to the power of designing persons to manufacture testimony against their neighbors. It will not do to say that Moore was a friend of the defendant, and hence that the evidence was admissible. It would be quite easy for an enemy, under the guise of friendship, to indict the most damaging epistles to a victim whose destruction he was seeking to encompass. The question of friendship or enmity does not properly constitute a factor in the problem. The letter was a statement of a third party, in no wise connected with defendant; was not made under the sanction of an oath; and not admissible. The possession of unanswered letters is not such evidence of acquiescence in their contents as to make them admissible in a civil case, and a letter found upon a prisoner when arrested has been held to be no evidence of the facts stated in it. Rap. Cr. Law, § 283; Whart. Cr. Ev. § 682; People v. Green [1 Denio, N.Y., 614], 1 Parker, Cr. R. [N.Y] 11; Com. v. Edgerly, 10 Allen [Mass.] 184; Smith v. Shoemaker, 17 Wall. 630, [21 L. Ed. 717]. There are exceptions to the rule,—as, for instance, where it is shown that the defendant has acted upon the information contained in the letter; or where he has answered it, in which case so much of the letter as is explanatory of his answer is admissible; or where the party receiving the letter has by his acts or conduct invited the sending of it to him. There was no sufficient showing to render the letter admissible under any of these exceptions."

This letter was hearsay and not competent for any purpose.

380

The county attorney has presented an excellent brief on the proposition that this letter is admissible as the acts of an accomplice done during the existence of a conspiracy and in furtherance thereof. However, we find the county attorney taking an inconsistent position in his brief concerning this question and another question which was presented. One of the alleged errors presented by defendant is that the court erred in not instructing the jury as a proposition of law that Sam Marrs and Louis Brown were accomplices of the defendant. In discussing that proposition the county attorney insists that the proof does not show that they are accomplices and we think he is correct. In Yeargain v. State, 57 Okla. Cr. 136, 45 P. 2d 1113, it is stated:

"Ordinarily, the thief is not an accomplice of one who receives the stolen property, knowing the same to have been stolen, but where there is a previous arrangement between the thief and the receiver for one to steal and the other to receive, and pursuant to such plan the property is stolen and received, they are principals, and the receiver is an accomplice of the thief, and the thief is an accomplice of the receiver."

The proof does not show any previous arrangement for Brown and Marrs to steal and Lizar to receive stolen property. If it had done so, the court would have erred in not instructing the jury that Marrs and Brown were accomplices of the defendant Lizar. They were not accomplices engaged in a conspiracy to commit crime. The trial court did not admit the note in evidence as an act done by coconspirators, but limited its application solely to the proposition as to whether it showed there was ill-feeling between the parties. We have concluded that the admission of this note allegedly written by Brown was error.

If we were to sustain the admissibility of this note in evidence, its tendency to abuse would be so great as might create an injustice in many future cases towards a person accused of crime. It would be very easy to frame an accused by having an alleged accomplice write damaging statements to be read as evidence against the accused to bolster the testimony of the alleged accomplice. This invitation to abuse is so great that we will not extend the exceptions to the hearsay rule for the purpose of authorizing the introduction of such evidence.

As to the proposition of the failure to give an instruction on accomplice testimony, in addition to what was stated above in discussing the other assignment of error, we think the court did not err in this regard for the reason that no request for an instruction on accomplice testimony was presented by counsel for defendant. In a retrial of this case the court might properly submit this question of whether Brown and Marrs were accomplices as a question for determination by the jury. In Yeargain v. State, supra, it is stated:

"Where the evidence is conflicting as to whether a witness participated in committing the crime charged, the question as to whether or not such witness is an accomplice is one of fact for the jury. But where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make a witness an accomplice."

The many other errors presented by counsel for defendant, including the alleged disqualification of the juror Hooper, the alleged error in overruling the motion to quash the information, the alleged error in overruling the motion for continuance, and other assignments are not of sufficient merit to require discussion. The court's ruling in all instances, except those herein discussed, appears to us to have been correct.

For the reasons, hereinabove stated, the judgment of the district court of Pawnee county is reversed and remanded with instructions to grant the defendant a new trial.

BAREFOOT, P. J., and DOYLE, J., concur.